**COMTRONICS, INC., Plaintiff,**

v.

**PUERTO RICO TELEPHONE COMPANY and Salvador Rodriguez Aponte, personally and in his official capacity as President of Puerto Rico Telephone Company and Executive Director of the Telephone Authority of Puerto Rico, Defendants.**

**Civ. No. 74–1243.**

United States District Court, D. Puerto Rico.

June 17, 1975.

---

Sigfredo A. Irizarry, San Juan, P. R., for plaintiff.

Alberto Picó, Brown, Newsom & Córdova, San Juan, P. R., for defendants.

## OPINION AND ORDER

TOLEDO, Chief Judge.

On November 11, 1974, plaintiff filed this action for damages, declaratory and injunctive relief to redress an alleged deprivation of rights secured to plaintiff by the Constitution and Laws of the United States and the Laws of the Commonwealth of Puerto Rico. The action was brought under Title 42, United States Code, Section 1983 with the claim that defendants, acting under color of law, have deprived plaintiff of its rights to due process and equal protection in violation of the Fifth and Fourteenth Amendments to the United States Constitution and of said Civil Rights Statute, and jurisdiction of the Court was invoked under Title 28, United States Code, Section 1343 and also under Title 28, United States Code, Section 1331.

In the complaint plaintiff specifically alleged that defendants, in violation of the applicable Federal Communications Commission's holdings, rulings and policies pertaining to interconnection of cus-

tomer owned telephone terminal equipment, as well as the policies and rulings of the Public Service Commission of Puerto Rico and defendants' own Marketing Practice Number 0027 of December 21, 1973, have refused since August 21, 1974 to provide interconnection to their telephone lines of terminal equipment sold by plaintiff to defendants' subscribers. Plaintiff contends that this unilateral decision is discriminatory and denies plaintiff the equal protection of the laws, that it constitutes an abridgement of the obligations of contracts and that it constitutes a confiscating, taking and expropriating of plaintiff's property, business and operations without compensation and without due process of law.

Pursuant to the request for injunctive relief, on November 12, 1974 the Court ordered defendants to show cause why such relief should not be granted and set a consolidated hearing for both the injunctive relief and damages for January 9, 1975.

On November 27, 1974, defendants filed a motion to dismiss the complaint on the grounds that it fails to state a claim upon which relief can be granted since the matter involved is one within the primary jurisdiction of the Federal Communications Commission (FCC) and said Commission, before which the issue was already pending in a proceeding started before the action was filed, should resolve the issue in the first instance. On that same date, defendants moved the Court to stay its order to show cause until its motion to dismiss was decided.

On December 5, 1974, defendants filed a second motion to dismiss, this time on the grounds that the Court lacks jurisdiction to entertain the action for the controversy does not involve any right or immunity created by the Constitution and Laws of the United States, but rather, only involves a commercial grievance by a local business concern against a public corporation of the Commonwealth of Puerto Rico. In their motion, defendants argued that the alleged violation of rulings and policies of the FCC does not

create a Federal cause of action capable of conferring jurisdiction on this Court and, further, that jurisdiction under Title 42, United States Code, Section 1983 and Title 28, United States Code, Section 1343 as to any case is doubtful in view of the decision of the United States Supreme Court in *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

Plaintiff duly opposed both motions and, the Court having granted a stay of its order to show cause, the parties presented oral argument on the motions on January 9, 1975. Finding that the issues involved required further dilucidation, the Court on January 28, 1975 ordered the parties to file certain pertinent documents and additional briefs addressed to specific points detailed in the order. Through that same order, the Court directed defendants to answer the complaint, set March 4, 1975 as the new date for the previously stayed consolidated hearing and detailed a time table for compliance with the terms of the original order to show cause of November 12, 1974.

The parties complied with the requested filing of briefs and documents and, in addition, defendants once more moved the Court to continue further proceedings in the case until the motions to dismiss of November 27, 1974 and December 5, 1974 were decided. The Court granted the motion on February 26, 1975 and, having carefully considered the evidence before it and the arguments advanced by the parties, is now ready to issue its ruling on the motions to dismiss.

We must necessarily consider first the question of the Court's jurisdiction, raised by defendants on their second motion to dismiss, since whether or not the complaint states a cause of action upon which relief can be granted is a question of law calling for a judgment on the merits. Clearly, it can only be decided after the Court assumes jurisdiction. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1945). In this respect we must point out at the outset that, as defendants concede, this Court

has repeatedly held that Title 42, United States Code, Section 1983 and Title 28, United States Code, Section 1343, are as applicable with respect to the Commonwealth of Puerto Rico as they are with respect to any State of the Union. See, for example, *Wackenhut Corporation v. Union de Tronquistas de P.R., Local 901*, 336 F.Supp. 1058 (D.C.P.R.1971); *El Mundo, Inc. v. Puerto Rico Newspaper Guild*, 346 F.Supp. 106 (D.C.P.R.1972); *Marin v. University of Puerto Rico*, 346 F.Supp. 470 (D.C.P.R.1972); *Cordeco Development Corp. v. Vazquez*, 354 F.Supp. 1355 (D.C.P.R.1972); *King v. Conservatorio de Musica de P.R.*, 378 F.Supp. 746 (D.C.P.R.1974). Despite defendants' urging, we do not perceive that *Calero-Toledo v. Pearson Yacht Leasing Co.*, supra, requires us to hold any differently now. In that case, the Supreme Court had no occasion to address the question of whether Puerto Rico is a "State" for purposes of Title 28, United States Code, Section 1343. In the absence of a holding to the effect that Puerto Rico is not a "State" for purposes of the Civil Rights statutes, this Court does not feel that its previous pronouncements have in any way been affected.

■ Turning now to the question whether Title 42, United States Code, Section 1983 and Title 28, United States Code, Section 1343 can be properly invoked by plaintiff, we begin by noting that property rights are basic civil rights which are constitutionally protected and which have been given the statutory protection of Title 42, United States Code, Section 1983 and its jurisdictional counterpart, Title 28, United States Code, Section 1343. *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); *Gaffney v. Silk*, 488 F.2d 1248 (1 Cir. 1973); *Cordeco Development Corp. v. Vazquez*, supra. It is equally settled that a corporation is a "person" within the meaning of both Title 42, United States Code, Section 1983 and Title 28, United States Code, Section 1343 and hence, that it is entitled to sue under the provisions of said statutes for the protection of its rights under the

Constitution and Laws of the United States. *McCoy v. Providence Journal Co.*, 190 F.2d 760 (1 Cir. 1951); *Wackenhut Corporation v. Union de Tronquistas de Puerto Rico, Local 901*, supra; *Toa Baja Development Corporation v. Garcia-Santiago*, 312 F.Supp. 899 (D.C.P.R. 1970); *Inmobiliaria Borinquen, Inc. v. Garcia-Santiago*, 295 F.Supp. 203 (D.C.P. R.1969).

■ There being no question that plaintiff can seek to vindicate its civil rights under the civil right statutes, the inquiry must then turn to a determination of whether the complaint properly brings an action under said statutes. In order to maintain a cause of action under Section 1983 a plaintiff must show that defendants, acting under color of law, have subjected plaintiff to a deprivation of rights, privileges or immunities secured to plaintiff by the Federal Constitution and Laws. *Kletschka v. Driver*, 411 F.2d 436 (2 Cir. 1969); *Jones v. Hopper*, 410 F.2d 1323 (10 Cir. 1969), cert. den. 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1969). In the instant case plaintiff certainly alleges that its rights to equal protection and due process have been infringed by defendants acting under color of state law. However, since bare assertions do not confer jurisdiction we must determine if the factual allegations of the complaint support the conclusionary allegations of constitutional deprivation. *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699 (2 Cir. 1972); *Metcalf v. Ogilvie*, 436 F.2d 361 (7 Cir. 1970); *Finley v. Rittenhouse*, 416 F.2d 1186 (9 Cir. 1969); *Negrich v. Hohn*, 379 F.2d 213 (3 Cir. 1967); *Pugliano v. Staziak*, 231 F.Supp. 347 (D.C.Pa.1964), affd. 345 F.2d 797 (3 Cir. 1965).

■■ Considering first the equal protection claim the Court finds no factual allegations in the complaint which support it. Plaintiff merely claims in Paragraph 15 that: "The unilateral decision referred to in paragraph 17, above, is discriminating and denies plaintiff the equal protection of the laws because defendants, without giving any reasons for it, are obstructing Comtronics' operations

while at the same time they are reserving the power of determining who will be allowed to interconnect and what similar companies will be permitted to operate in Puerto Rico. Moreover, they have not promulgated or published any standards, guidelines or criteria for the exercise of said power, with the obvious intent to use it—as they are using it—capriciously and arbitrarily." However, no allegation is made that any other company has been permitted to sell telephone terminal equipment for interconnection with defendants' telephone system and has in fact obtained such interconnection for its customers at any time since defendants ceased to allow interconnection by plaintiff's customers. No allegation is made that any competing company even exists in Puerto Rico and plaintiff effectively negates such possibility when it argues in Paragraph 17 that defendants "are trying to force Comtronics out of business *in order to eliminate competition . . .*" and that "defendants *intend to force any subscriber* desiring to use and have terminal equipment and switchboards *to rent said equipment from PRTC . . .*" (emphasis ours).

Further, PRTC, which plaintiff correctly states in his complaint is a wholly owned subsidiary of the Telephone Authority of Puerto Rico and acts as its agent, is actually precluded by law from allowing interconnection to any possible future competitor of Comtronics since the law creating a public corporation to own and operate the telephone and telegraph system in Puerto Rico establishes a governmental monopoly. The legislative mandate is clear in the Statement of Motives of Law # 25 of May 6, 1975 (the "Telephone Act") wherein it is stated ". . . In turn, the achievement of the objectives in an efficient manner requires that the operation of the system of communications be entrusted *to a single governmental entity . . .* To this end, the Puerto Rico Telephone Authority is hereby created which will be a public corporation *that will acquire and operate*, through the means it may deem more convenient to the public interest, *the entire telephone and telegraphic system of Puerto Rico* in order that said system may satisfy the present and future communication needs of our people." (translation and emphasis supplied).

In short, plaintiff has failed to show that it has been denied the equal protection of the Laws of the Commonwealth of Puerto Rico through any factual allegations, which if proved, would establish discriminatory treatment. Mere conclusionary allegations, no matter how strongly worded, are not sufficient, particularly so when they refer to intended future conduct.

In view of the above we hold that the equal protection claim is patently frivolous and without merit. The claim appears to have been made solely for the purpose of obtaining jurisdiction and, having no factual allegations to support it, is wholly insubstantial and incapable of sustaining an action under Section 1983.

■■■ Considering now the due process claim we note that the Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests already acquired in specific benefits. These property interests, or property rights, obviously may take many forms. But in order for such a property interest in a benefit to exist, there must exist more than an abstract need or desire for it on the part of the one seeking constitutional protection for his alleged property right. A mere unilateral expectation is clearly insufficient and in order to properly invoke the due process clause, plaintiff must show that he has "a legitimate claim of entitlement" to the benefit in question. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 701, 33 L.Ed.2d 548 (1972).

Further, plaintiff must also show that defendants acted under color of state law when they deprived plaintiff of said constitutionally protected property right in order that the complaint may be properly maintained under Title 42, United States Code, Section 1983. *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598,

26 L.Ed.2d 142 (1969). In other words, the burden of plaintiff is twofold. It must show it has a property right capable of receiving constitutional protection and also that the deprivation of this right has been the result of "state action" in order that the suit can be brought under Section 1983.

The second burden has been easily sustained by plaintiff. There is certainly no difficulty in finding that there exists "a sufficiently close nexus between the State and the challenged action . . . so that the action . . may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477, 43 U.S. Law Week 4110 (Dec. 24, 1974). See also, *Limuel v. Southern Union Gas Co.*, 378 F.Supp. 64 (W.D.Tex.1974). Given the enactment by the Legislature of the Commonwealth of Puerto Rico of the "Telephone Act" creating the Puerto Rico Telephone Authority and providing for the purchase of defendant Puerto Rico Telephone Company by said public authority, there can be no doubt that action by the Puerto Rico Telephone Company and its officers constitutes "state action" for purposes of Title 42, United States Code, Section 1983.

However, plaintiff has failed to show that it has been deprived of a property interest to which it has the prerequisite claim of entitlement and thus the Court finds that the question of whether plaintiff has been deprived of a constitutionally protected property right, although not easily settled, must also be answered in the negative. No property right having been shown to exist, there can be no due process claim based upon its alleged deprivation.

In Paragraph 16 of the complaint, plaintiff invokes the due process clause stating: "The . . . acts and conduct of defendants . . . are having . . . the effect of expropriating, taking and confiscating Comtronics' property, business and operations without due process of law and without compensation." The facts pleaded to support the allegation are briefly as follows:

1. That Comtronics has operated for over a year, selling and servicing $165,800.00 worth of telephone terminal equipment and investing $65,000.00 in its business.

2. That it has prospective customers for $608,002.00 worth of equipment and its projected net income for the next five years is $900,000.00.

3. That up to about August 21, 1974, it operated coordinating interconnection with PRTC in accordance with the policies, holdings and rulings of the FCC, the Public Service Commission of Puerto Rico and PRTC's Marketing Practice # 0027 of December 21, 1973.

4. That eight of Comtronics' customers have interconnection contracts with PRTC, that PRTC agreed that Comtronics, as agent for the subscriber, would be allowed to interconnect and maintain terminal equipment which met certain specifications and that the established and agreed to procedure required Comtronics to communicate and coordinate with PRTC as to each interconnection.

5. That since August 21, 1974, Comtronics has been unable to coordinate its activities with PRTC since defendants refuse to even reply to any letters and have taken the position that they will not allow the intercommunication to its lines of telephone terminal equipment sold by Comtronics.

6. That this unilateral decision has not been officially notified to plaintiff, has not been the subject of any promulgated rules or hearings and is preventing Comtronics from fulfilling its contracts with its customers.

It is clear from the factual allegations that no property of Comtronics is actually being expropriated or in danger of being expropriated. Comtronics does not own and lease telephone terminal equipment. Rather, it sells and services such equipment. It is only this telephone terminal equipment, owned by PRTC subscribers, that can be affected by the declaration of public interest in the Tele-

phone Act. In this respect we must point out that in its Statement of Motives, said statute declares: "This Legislative Assembly understands that . . *it is necessary that the 'communications facilities' of Puerto Rico, as this phrase* is defined in this law, *be owned* and operated *by the Commonwealth of Puerto Rico.*" In Article 2, "communications facilities" are defined as ". . . *all goods* of whatever nature, movable, unmovable or mixed, *that may be used or be useful at present or in the future, in relation to the operation of telephone, telegraph, radio and cable systems or hardware*, or any other communication system or hardware . . ." (translation and emphasis ours).

Clearly, Comtronics can only base its due process claim on a legitimate claim of entitlement to its business operations. Thus we must address the question of whether Comtronics has a "right" to sell and service telephone terminal equipment in Puerto Rico, which "right" has been impaired without due process of law depriving plaintiff of the legitimate profits to be derived from said business operations.

■ We must start our analysis of this question by pointing out that it is settled law that an inherent attribute of government is the police power to regulate business activity within its jurisdiction in furtherance of the public interest and welfare. If any pecuniary loss is thereby suffered by anyone, the legislating government is not constitutionally bound to compensate the aggrieved party as such consequential loss does not constitute a "taking of property" in the constitutional sense. In other words, if the legislation involved is within the legitimate sphere of legislative power and reasonably intended to promote the public health, safety or general welfare, there is no violation of the due process clause irrespective of the magnitude of the loss that may have occurred. If the legislation reasonably safeguards the public interest, property rights can be affected without compensation and yet no "taking" of property without due process can be said to occur.

■ Thus, in the exercise of its police power the Commonwealth can, for example, establish minimum wages, maximum prices and zoning restrictions, impose taxes and duties, restrict entry and control permanence in particular business fields or professions through licensing, condemn or destroy property not meeting promulgated health or safety standards and establish public monopolies. All of these can and do bring economic harm to some, without compensation, but yet they are all recognized as valid exercises of the police power for they are intended to promote the public good. See, for example, *North Dakota Pharmacy Bd. v. Snyder's Stores*, 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973); *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1962); *Goldblatt v. Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1961); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1954); *Daniel v. Family Security Life Ins. Co.*, 336 U.S. 220, 69 S.Ct. 550, 93 L.Ed. 632 (1948); *Queenside Hills Co. v. Saxl*, 328 U.S. 80, 66 S.Ct. 850, 90 L.Ed. 1096 (1945); *Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1943); *Olsen v. Nebraska*, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305 (1940); *U. S. v. Rock Royal Co-Op*, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1938); *Standard Oil Co. v. Marysville*, 279 U.S. 582, 49 S.Ct. 430, 73 L.Ed. 856 (1928); *Miller v. Schoene*, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928); *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Mugler v. Kansas*, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887); *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1873).

■ The right to exercise the police power is a continuing one. It is one of the essential powers of government and the imperative necessity for its existence precludes any limitation upon it unless it be arbitrarily exercised. It is probably the last limitable of govern-

mental powers, even though in its operation it often cuts down property rights, and is capable of being exercised to regulate retroactively without offending due process. Thus it is that a vested interest in existing conditions, be it a license to operate a business, existing building codes or zoning regulations, present rates of interests, health regulations, or whatever, cannot be asserted against the proper exercise of the police power. See for example *El Paso v. Simmons*, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965); *Queenside Hills Co. v. Saxl,* supra; *East New York Savings Bank v. Hahn*, 326 U.S. 230, 66 S.Ct. 69, 90 L.Ed. 34 (1945); *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934); *Block v. Hirsch*, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921); *Rast v. Van Doman & Lewis*, 240 U.S. 342, 36 S.Ct. 370, 60 L.Ed. 679 (1915); *Chicago & Alton R.R. v. Tranbarger*, 238 U.S. 67, 35 S.Ct. 678, 59 L.Ed. 204 (1914); *Hadacheck v. Sebastian*, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915); *Otis v. Parker*, 187 U.S. 606, 23 S.Ct. 168, 47 L.Ed. 323 (1903); *Booth v. Illinois*, 184 U.S. 425, 22 S.Ct. 425, 46 L.Ed. 623 (1902).

Clearly, there is no constitutionally protected right to operate a given business in contravention of laws validly enacted by the Commonwealth of Puerto Rico in the exercise of its police power. As shown in the cases cited above, no business can be immunized by existing conditions from future regulation or even prohibition. Simply stated, there is no "civil right" that can be asserted with respect to any particular business. Thus, the fact that the Commonwealth has created a governmental monopoly to own and operate all telephone and telegraph communications facilities in Puerto Rico and that consequently Comtronics, being no longer able to sell equipment to PRTC subscribers, will not realize its expected future profits does not per se constitute a taking of property without due process.

We are certainly aware that plaintiff intimates through several allegations in the complaint that it has contractual rights to interconnection and that, through affidavits of Mr. Guillermo J. Godreau, it maintains that a verbal working agreement was actually reached with PRTC, which agreement provided that Comtronics would be allowed to interconnect and service customer owned telephone terminal equipment. We are also aware that the record shows PRTC Marketing Practice # 0027 to be an internal operating procedure for the guidance of its own personnel in arranging interconnection with subscribers, that the interconnection agreement required by said marketing practice only specifies the rights and obligations between the two contracting parties, PRTC and its subscriber, and clearly establishes that the agreement will be in force until the approval by the Puerto Rico Public Service Commission (PSC) of the PRTC proposed interconnection regulations and rates, that said regulations or rates had not been approved when the PSC lost jurisdiction over the matter by express provision of the "Telephone Act" and, finally, that a written agreement with respect to interconnection and servicing of customer owned terminal equipment, allegedly embodying the terms of the verbal agreement, and which was prepared, signed and submitted by Comtronics, was rejected in writing by PRTC on November 27, 1973. Thus it is clear to the Court that only from the alleged verbal working agreement could any contractual rights of Comtronics arise.

However, in our determination of whether this Court has jurisdiction, we will not enter into a dilucidation of the contractual obligations that may have been mutually incurred by PRTC and Comtronics, if any. Since an action based on contractual rights is one based on state law and, absent diversity jurisdiction as is here the case, incapable of conferring jurisdiction on the Court, it can only be entertained as a pendant claim if there exist a substantial Federal claim which does provide the prerequisite Federal jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130,

16 L.Ed.2d 218 (1966); *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); *Rivera v. Chapel*, 493 F.2d 1302 (1 Cir. 1974). In other words, we need a jurisdictional base *before* we can entertain the contractual state law claim. We can not determine first if any contractual rights actually exist in order to then base jurisdiction on their unconstitutional deprivation.

 Further, whether or not a valid and enforceable contract was entered into verbally by PRTC and Comtronics will be irrelevant in determining whether there has been a deprivation of property without due process. As discussed above, the police power can be validly exercised to the detriment of vested interests, including those existing by virtue of contract. The Commonwealth has inherent authority to safeguard the interests of its citizens and it does not offend due process that legislation appropriate to that end results in the modification or abrogation of existing contracts. *El Paso v. Simmons*, supra; *East New York Savings Bank v. Hahn*, supra; *Gelfert v. National City Bank*, 313 U.S. 221, 61 S.Ct. 898, 85 L.Ed. 1299 (1940); *Veix v. Sixth Ward Building & Loan Ass'n*, 310 U.S. 32, 60 S.Ct. 792, 84 L.Ed. 1061 (1940); *Honeyman v. Jacobs*, 306 U.S. 539, 59 S.Ct. 702, 83 L.Ed. 972 (1939); *Home Building & Loan Ass'n v. Blaisdell*, supra; *Stephenson v. Binford*, 287 U.S. 251, 53 S.Ct. 181, 77 L.Ed. 288 (1932); *Atlantic Coast Line R. Co. v. Goldsboro*, 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721 (1914); *Manigault v. Springs*, 199 U.S. 473, 26 S.Ct. 127, 50 L.Ed. 274 (1905); *Stone v. Mississippi*, 101 U.S. 814, 25 L.Ed. 1079 (1880).

In short, as the Court aptly stated in *Atlantic Coast Line R. Co. v. Goldsboro*, supra, "It is settled that neither the "contract" clause nor the "due process" clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good, order, comfort, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is in-alienable even by express grant; and all contract and property rights are held subject to its fair exercise."

 Consequently, the possible existence of an enforceable contract is not dispositive. Even granting that such state law dependent property interest does exist, the fact that by the enactment of a law said contract has been impaired does not constitute a taking of property without due process. The test is not that a loss occurred because of enactment of the law but rather whether the law is a reasonable exercise of the police power of the Commonwealth. As stated in *Home Building & Loan Ass'n v. Blaisdell*, supra, "The question is not whether the legislative action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end."

The test being one of reasonableness of the legislation, in order to determine that due process has been violated the Telephone Act itself must be challenged as being unconstitutional. Absent such a challenge on the part of plaintiff, an unconstitutional deprivation of property can not be based on the implementation of the statute for, as we have amply discussed above, the clear legislative mandate is for government ownership and operation of *all* telephone equipment in Puerto Rico and thus PRTC does not have any discretion to allow interconnection of customer owned equipment to its lines. Plaintiff does not challenge the statute and therefore we must hold that plaintiff does not have any constitutionally protected contract rights.

Our inquiry must now turn to a determination of whether plaintiff has any right under Federal law to operate its business, for if such is the case, the required "legitimate claim of entitlement" subject to constitutional protection exists and the Court has jurisdiction to entertain this action under Section 1983.

 In this respect we must point out that it has long been recognized that the Federal Communications Act of 1934,

Title 47, United States Code, Section 151 et seq. did not create any private rights. *Scripps Howard Radio v. FCC*, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1941). The Act is an act regulating commerce. *National Broadcasting Co. v. United States*, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943). Even the granting of a license under authority of the Act does not give any person anything in the nature of a property right, *FCC v. Sanders Bros. Radio Station*, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940). More explicitly, the Court in *Ashbacker Radio Corp. v. FCC*, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945), stated: "No licensee obtains any vested interest in any frequency. The Commission . . . may revoke any station license . . . and may suspend the license . . . and licenses . . . are limited to three years . . ." In short, as stated in *Federal Communications Commission v. Pottsville Broadcasting Co.*, 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940): "The Communications Act is not designed primarily as a new code for the adjustment of conflicting private rights through adjudication." See also *American Broadcasting Co. v. FCC*, 89 U.S. App.D.C. 298, 191 F.2d 492 (1951); *WYDE, Inc. v. Bartell Broadcasting Corp.*, 199 F.Supp. 773 (D.C.N.Y.1961); *Moro v. Telemundo Incorporado*, 387 F.Supp. 920 (D.C.P.R.1974).

■ It is clear therefore that plaintiff cannot claim any Federal property right in relation to the operation of its business. If even a licensee of a broadcasting station does not acquire a property right, much less can plaintiff claim such a right under Federal law when it is not a licensee and is not even claiming violation of the FCC regulations as a subscriber of PRTC. We hold therefore that plaintiff, having no constitutionally protected property right based on either State law or Federal law, can not invoke the due process clause for its alleged deprivation and can not bring suit under Title 42, United States Code, Section 1983 and Title 28, United States Code, Section 1343. Jurisdiction under these statutes does not exist in the present case.

This determination, however, does not preclude the existence of Federal jurisdiction pursuant to Title 28, United States Code, Section 1331. We must therefore determine whether said statute confers jurisdiction on the Court to entertain the present action.

Section 1331 provides that the district courts shall have original jurisdiction of all civil actions "wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interests and costs, and arises under the Constitution, laws or treaties of the United States." There being no question that plaintiff's claim, which prays for damages in the total amount of $310,000.00, meets the jurisdictional amount requirement, we will proceed to determine if the second requirement is met, namely, whether the claim "arises under" Federal law.

In this respect we wish to point out that whether a claim so arises is often a difficult question. No clear test has yet been developed to determine which cases "arise under" the Constitution, laws or treaties of the United States. In *Osborn v. Bank of the United States*, 9 Wheat. (22 U.S.) 738, 6 L.Ed. 204 (1824), the Court stated "A case . . . may be said to arise under the Constitution or a law of the United States, whenever its correct decision depends on the construction of either." Later, in *Shulthis v. McDougal*, 225 U.S. 561, 32 S.Ct. 704, 56 L.Ed. 1205 (1912), the test was stated thus: "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily . . . one arising under those laws . . . unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." In *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916), it was held that "a suit arises under the law that creates the action" while in *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903

(1932), the Court held that "the federal nature of the right to be established is decisive, not the source of the authority to establish it". Finally, in *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), it was stated that "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action . . . [and] such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another."

■■■ We may summarize these different pronouncements by stating that for original Federal jurisdiction, there must exist a bona fide claim based on Federal law. It is not sufficient that Federal law merely furnish a necessary ingredient of a claim, it must provide the basis of the claim. Thus, when a claim is brought under a Federal statute the question to be answered is whether the plaintiff has any rights under the statute which he can vindicate in the Federal courts. This determination is not always easy to make since the fact that the statute does not explicitly provide a remedy does not necessarily preclude the existence of one. A remedy may be implied where from the purpose and thrust of the legislation it can reasonably be inferred that those situated in plaintiff's position were intended to have a right under the statute and that protection of that right is required if the ends sought by the legislation are not to be frustrated. In any event, the existence of a federally protected right is imperative in order to establish jurisdiction under Title 28, United States Code, Section 1331. In addition, the complaint must reveal that the asserted Federal right is an essential element of the cause of action and that the asserted right will be supported if the Federal law is given one construction and defeated if given another. *Midwestern Development, Inc. v. City of Tulsa*, 333 F.2d 1009 (10th Cir. 1964); *Young v. Harder*, 361 F.Supp. 64 (D.C.Kan.1973).

■■■ This approach may be expressed in more succinct terms as follows: An action arises under the Laws of the United States if, and only if, the complaint seeks a remedy expressly granted by a Federal statute or if the resolution of the issue requires construction of the statute or if the statute embodies a distinct policy that requires that Federal legal principles control its disposition. *Lindy v. Lynn*, 501 F.2d 1367 (3 Cir. 1974); *Ivy Broadcasting Co. v. American Tel. & Tel. Co.*, 391 F.2d 486 (2 Cir. 1968); *McFaddin Express, Inc. v. Adley Corp.*, 346 F.2d 424 (2 Cir. 1965), cert. denied 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966). See also, *Pan Am Corp. v. Superior Court*, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1960); *Skelley Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1949); *Hines v. Cenla Community Action Committee, Inc.*, 474 F.2d 1052 (5 Cir. 1973); *T. B. Harms v. Eliscu*, 339 F.2d 823 (2 Cir. 1964), cert. denied 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965).

■■■ Consonant with the above discussed approach, it is settled law that violation of a Federal law does not per se create a Federal cause of action. *Crane v. Cedar Rapids & I.C.R.R. Co.*, 392 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1968); *Dobb v. Baker*, 505 F.2d 1041 (1 Cir. 1974); *Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890 (10 Cir. 1972). See also *Wheeldin v. Wheeler*, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963); *Burgess v. Charlottesville S & L Association*, 477 F.2d 40 (4 Cir. 1973); *Barlow v. Marriott Corporation*, 328 F.Supp. 624 (D.C.Md.1971). On the other hand, where benefits or rights have been established by Federal legislation, the Courts have frequently implied the existence of appropriate legal remedies to enforce those rights. See for example, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Tunstall v. Brotherhood of Locomotive Firemen & Enginemen*, 323 U.S. 210, 65 S.Ct. 255, 89 L.Ed. 187 (1944).

In the present action, plaintiff invokes jurisdiction of the court under Title 28, United States Code, Section 1331 alleging that defendants' actions "are unreasonable and in violation of the rulings and policies of the FCC with respect to the subject of interconnection of terminal telephone equipment, and are thus in violation of the United States statutes administered by said Commission" (Par. 20 of the Complaint). As more fully developed in oral and written argument, plaintiff's contention is that in accordance with existing FCC policies and decisions, PRTC is under the obligation to allow interconnection of customer owned terminal equipment to its telephone lines pursuant to AT & T Tariff FCC # 263, and that despite this obligation, defendants are refusing to allow such interconnection and are thus in violation of Sections 201, 202, 203 and 502 of the Communications Act of 1934, Title 47, United States Code, Section 151 et seq.

The question before us is whether, in accordance with the criteria previously discussed, this allegation presents a claim "arising under" Federal law and thus capable of conferring jurisdiction on the Court. Defendants contend, correctly as we have discussed, that violation of a Federal statute does not per se create a Federal cause of action. This, however, does not dispose of the issue. What we must determine is whether plaintiff has a federally protected right under the statute allegedly violated, whether such right is an essential element of the claim and whether it will be supported if the statute is given one construction and defeated if given another. We must therefore turn to the Communications Act of 1934, Title 47, United States Code, Sections 151–609 (the Act).

■■■ There is no question as to the applicability of the Act with respect to telephone communications. The Act promulgated by Congress under the authority of the commerce clause of the Federal Constitution, preempts the field in the regulation of interstate communications. As clearly expressed in Section 151 thereof, the Act was enacted "For the purpose of regulating interstate and foreign commerce in communication by wire and radio . . ." Thus, since PRTC is not only engaged in intrastate communication by wire, but also engaged in interstate communication through the same installed plant (lines, telephones, etc.), there is no question that it is subject to regulation under the Act.

However, PRTC is not a "common carrier", as defined in the Act, but merely a "connecting carrier" and thus not all the provisions of the Act are applicable with respect to PRTC. Section 153(u) of the Act defines "connecting carrier" as "a carrier described in Clauses (2), (3) or (4) of Section 152(b) of this title". In turn, Section 152(b) establishes that "Subject to the provisions of section 301 of this title, nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to . . . (2) any carrier engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier . . . *except that sections 201–205 of this title shall, except as otherwise provided therein, apply to carriers described in clauses (2)–(4) of this subsection.*" (emphasis supplied). Since Section 301 refers to licensing for radio communication or transmission of energy, it is clear that with respect to regulation of communication by wire, PRTC is subject only to the provisions of Section 201 through Section 205 inclusive.

■■■ The question therefore narrows itself down to whether the applicable sections of the statute create a jurisdictional basis upon which to entertain the present action by granting plaintiff either an express remedy or a right which should be given Federal protection. Dilucidation of the issue thus must start with a review of these sections.

Under Section 201(a), PRTC has the duty "to furnish such communication service upon reasonable request there-

for" and, when ordered by the FCC, "to establish physical connections with other carriers to establish through routes and charges applicable thereto and the divisions of such charges, and to establish and provide facilities and regulations for operating such through routes". Section 201(b) requires all applicable "charges, practices, classifications and regulations" to be "just and reasonable" and declares them to be unlawful otherwise. It also provides that the FCC may prescribe rules and regulations to implement the provisions of the law, as necessary in the public interest.

Section 202(a) makes it unlawful for PRTC "to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities or services" or to give any "undue or unreasonable preference or advantage" to any person, group or locality, or to subject them to "undue or unreasonable prejudice or disadvantage." Section 202(b) makes clear that the use of carrier facilities in any radio communication is covered by the chapter and 202(c) provides that a knowing violation of the section will be subject to a $500 fine plus $25 per day for each day the violation continues.

Section 203(a) provides that PRTC must have open for public inspection all schedules of charges for interstate and foreign communication, that is, the tariffs in which it concurs as a connecting carrier. Section 203(b) provides that no changes in said tariffs can be made, once they are in force, except after 30 days notice to the FCC and the public, although the FCC may modify this requirement at its discretion. Section 203(c) provides that no carrier may provide service until the applicable tariff is legally in force and that the service and charges thereto must conform to the express terms of the tariff, while Section 203(d) provides that the FCC may reject a tariff if it does not provide lawful notice of its effective date, thus making it void and its use unlawful. Finally, Section 203(e) provides that failure of a carrier to comply with the section or any

regulation or order of the FCC thereunder subjects the carrier to a $500. fine plus $25 for each day the offense continues.

Section 204 provides that the FCC, upon complaint or motu propio, may enter into a hearing concerning the lawfulness of any charge, classification, regulation or practice filed by a carrier, and pending the decision thereof, may suspend its operation for a period of three months. If within that period of time the proceeding has not been concluded, the change filed will go into effect, although if it be a new charge, the FCC may require that accurate accounting be maintained by the carrier in the event refunds are later ordered as a result of the proceeding. The section also provides that at any such proceeding, the burden to show that the increased charge is just and reasonable shall be upon the carrier and that the FCC must decide the question speedily and with preference to other matters.

Finally, Section 205(a) provides that if the FCC, after opportunity for hearing, finds that any "charge, classification, regulation or practice . . . is or will be in violation of any of the provisions of this chapter, the Commission is authorized and empowered to determine and prescribe what will be the just and reasonable charge . . . to be thereafter observed, and what classification, regulation or practice is or will be just, fair and reasonable, to be thereafter followed, and to make an order that the carrier . . . cease and desist from such violation . . . that the Commission finds . . . does or will exist, and shall not thereafter publish, demand or collect any other charge . . and shall . . . observe the regulation or practice so prescribed." Section 205(b) in turn provides that a knowing violation of an order pursuant to this section is subject to a $1,000.00 fine, each distinct violation constituting an offense and each day a violation continues constituting likewise a separate offense.

It is clear from this review that Sections 201 through 205 of the Act do not

expressly provide this Court with jurisdiction to entertain a suit based on their provisions. Section 201 creates a duty to provide communication service upon reasonable request and under charges, practices, classifications and regulations that are just and reasonable, but it does not grant actual or potential subscribers access to Federal court in the event the duty is breached. Section 202 declares any discrimination in relation to communication service to be unlawful, but does not grant a cause of action to anyone subjected to such discrimination. Section 203 establishes the duty to provide communication service in accordance with previously filed tariffs which are available for public inspection at all times, but does not provide subscribers access to the Court if this duty is breached. Section 204 provides that hearings may be held concerning the lawfulness of any new charge, classification, regulation or practice and establishes the procedure which the FCC must follow in relation thereto, but the section neither imposes a duty on the carrier nor creates any private cause of action in relation to carrier activities. Finally, Section 205 empowers and authorizes the FCC to prescribe what will be a just and reasonable charge, classification, practice or regulation to be followed with regard to communication service, but it does not provide a private cause of action to anyone subjected to any unjust or unreasonable charge, classification, practice or regulation, either before or after the FCC prescribes what is the just and reasonable norm or charge.

In other words, under Sections 201 through 205, a customer of PRTC does not have a cause of action if PRTC violates any of the provisions of said sections. It is true that Section 206 imposes liability on a common carrier for the damages it may cause by committing any unlawful act, as defined in the Act, or by failure to do anything which the Act requires it to do, and further, that Section 207 provides that a person claiming to be damaged by any common carrier may bring suit in the appropriate district court for the damages which such common carrier may be liable under the provisions of the Act. However, said Sections are applicable only to *common carriers* and, as we have already discussed, PRTC is a *connecting carrier* which under the provisions of Section 152(b) is only subject to Sections 201 through 205 of Subchapter II of the Act.

Turning to the procedural and administrative provisions of the Act contained in Subchapter IV, and which of necessity are applicable, we must point out that under Section 401(a) this Court has jurisdiction to issue writs of mandamus to compel any person to comply with the provisions of the Act only upon application of the Attorney General of the United States at the request of the FCC, and that under 401(c) the Court has jurisdiction to enforce the provisions of the Act and punish all violations thereof upon prosecution of proceedings by the U. S. District Attorney at the request of the FCC. On the other hand, Section 401(b) provides that whenever any person fails or neglects to obey any order of the FCC, other than for the payment of money, the Commission or any party injured thereof, or the Attorney General of the United States, may apply to the appropriate Federal district court to obtain enforcement of the order. Finally, Section 401(d) establishes statutory provisions which will be held applicable to suits in equity brought by the United States under Sections 201–222.

Section 402(a) provides that FCC orders and decisions are subject to judicial review in accordance with Chapter 19A of Title 5 (which was repealed in 1966 and is now covered by Title 28, United States Code, Sections 2341 et seq.), except those appealable under 402(b). Said Section in turn establishes that the only orders of the FCC which are appealable to the U. S. Court of Appeals for the District of Columbia are those pertaining to broadcasting and made under the provisions of Subchapter IV. No further provisions of Subchapter IV, which details procedures that the FCC must employ to discharge its regulatory functions, have any bearing on our determi-

nation of the Court's jurisdiction and thus we find that no provision of this Subchapter grants a PRTC subscriber a cause of action in the event that PRTC violates any of the provisions of the Act which are binding on it.

We complete our review of the applicable provisions of the Communications Act by pointing out that Subchapter V details the penal provisions of the statute and that clearly neither Section 502 nor any other section therein creates any private cause of action for a subscriber which may suffer damage through a violation by PRTC of any provision of the Act. We therefore find that neither under Sections 201–205 nor under any of the other applicable provisions of the Act does there arise any cause of action for damages or injunctive relief as a result of a violation of the Act. Only under Section 402(b) could a subscriber apply to this Court, and then only to obtain enforcement of an *order* of the FCC, other than for the payment of money.

In other words, no provision of the Act expressly grants a subscriber the remedy sought by plaintiff in this action. The inquiry must therefore turn to whether such a remedy can be inferred from the statute because it grants plaintiff a right which should be federally protected in furtherance of the ends sought by the legislation or because the resolution of the issue presented requires construction of the statute. It is at this point that the fact that plaintiff does not sue as a subscriber of PRTC, that is, that the alleged violations committed by PRTC do not pertain to communication services received or requested by plaintiff from PRTC, becomes very relevant to the issue of jurisdiction and must be discussed.

We start by pointing out that even though a subscriber has not been in the Act expressly granted access to Federal court upon violation by PRTC of any of its applicable provisions, and even though a cause of action is not per se created upon violation of a Federal statute, nevertheless, were a subscriber to sue PRTC for violations of the Act, the Court would have subject matter juris-

diction to determine whether the complaint stated a claim upon which relief could be granted. In such a suit, we would be bound by *Bell v. Hood*, supra, simply because the Communications Act establishes duties which bind PRTC with respect to its subscribers and therefore creates rights which subscribers could invoke. In other words, subscribers might invoke rights under the Act which presented issues requiring construction of the statute or which, in furtherance of the purposes of the statute, required Federal protection. This of course does not mean that the suit would not be dismissed in view of the primary jurisdiction of the FCC under Section 151 of the Act, but then, as stated in *Bell v. Hood*, supra, upon such a finding that the complaint did not state a ground for relief "dismissal would be on the merits, not for want of jurisdiction." See for example, *Ivy Broadcasting Co. v. American Tel. & Tel. Co.*, supra; *Massachusetts Univ. Conv. v. Hildreth & Rogers Co.*, 183 F.2d 497 (1 Cir. 1950); *Weiss v. Los Angeles Broadcasting Co.*, 163 F.2d 213 (9 Cir. 1947), cert. denied 333 U.S. 876, 68 S.Ct. 895, 92 L.Ed. 1152 (1948); *Regents of New Mexico v. Albuquerque Broadcasting Co.*, 158 F.2d 900 (10 Cir. 1947); *Ackerman v. Columbia Broadcasting System, Inc.*, 301 F.Supp. 628 (S.D.N.Y.1969).

■ We cannot however equally find jurisdiction in the present action because plaintiff is not a subscriber of PRTC and can not invoke any right under the statute. The Act does not impose any duty on PRTC with respect to plaintiff. It is only intended to establish the conditions upon which communications services of an interstate nature will be lawfully provided and thus only regulates the bilateral relationship between the carrier and its subscriber. Since plaintiff can not invoke any rights under the statute, there is no need to construct the provisions of the Act and certainly the ends of the legislation do not call for Federal protection of rights that it does not establish. As a party outside the scope of regulation established by the Communi-

cations Act, plaintiff can not derive therefrom any federally protected right upon which to base a claim and, consequently, said statute can not confer jurisdiction under Title 28, United States Code, Section 1331. *Gully v. First National Bank,* supra; *Lindy v. Lynn,* supra; *Burgess v. Charlottesville S & L Association,* supra; *Hines v. Cenla Community Action Committee, Inc.,* supra; *McCorkle v. First Pennsylvania Banking & Trust Co.,* 459 F.2d 243 (4 Cir. 1972); *Midwestern Development, Inc. v. City of Tulsa,* supra; *Daly v. Columbia Broadcasting System, Inc.,* 309 F.2d 83 (7 Cir. 1962); *Young v. Harder,* supra; *Barlow v. Marriott Corporation,* supra; *Shefa, Inc. v. Puerto Rico Financial Corp.,* 315 F.Supp. 314 (D.C.P.R. 1970); *Davidson v. General Finance Corporation,* 295 F.Supp. 878 (N.D.Ga. 1968).

Upon the preceding considerations, the Court finds that it does not have jurisdiction pursuant to Title 28, United States Code, Section 1331 to entertain the present action. Having previously found that jurisdiction under Title 42, United States Code, Section 1983 and Title 28, United States Code, Section 1343 is equally lacking, we can not proceed any further and must grant defendants' motion to dismiss of December 5, 1974 for lack of jurisdiction. Given its findings, the Court will not consider defendants' motion to dismiss of November 27, 1974 and hereby dismisses the complaint.

Judgment will be entered accordingly.