Magalene HARPER, d/b/a Nugent's
Health Clinic, et al., Plaintiffs,

v.

Jon LINDSAY, County Judge of Harris
County, Texas, et al., Defendants.

Civ. A. Nos. H–77–1435, H–77–1464.

United States District Court,
S. D. Texas,
Houston Division.

May 31, 1978.

Clyde Woody and Marian Rosen, Woody & Rosen, Houston, Tex., for plaintiffs.

Joe Resweber, County Atty., Billy E. Lee and Richard Beu, Asst. County Attys., Houston, Tex., for defendant Commissioners' Court.

Carol S. Vance, Dist. Atty., and Joe Moss, Senior Asst. Dist. Atty., Houston, Tex., for defendants Harris County District Attorney and Sheriff.

## MEMORANDUM AND OPINION

CARL O. BUE, Jr., District Judge.

### I. INTRODUCTION AND BACKGROUND

On August 29, 1977, Magalene Harper and 21 other named plaintiffs, on behalf of themselves and all others similarly situated, filed suit against the individual members of the Harris County Commissioners' Court, the Harris County Sheriff and the Harris County District Attorney alleging that certain of the recently enacted county regulations controlling massage parlors are beyond the legislative authority vested in the Commissioners' Court and that the enforcement of many of the regulations will violate certain constitutional and federal statutory rights. Plaintiffs requested a temporary restraining order and a preliminary injunction enjoining the enforcement of the regulations pending trial on the merits.

On August 31, 1977, counsel for defendants Sheriff and District Attorney agreed to the issuance of a temporary restraining order for a period of 60 days pursuant to Rule 65, Fed.R.Civ.P., so as to maintain the status quo until such time as the necessary briefing of the numerous legal questions raised by plaintiffs could be accomplished.

On September 9, 1977, counsel for the Commissioners' Court filed a motion to vacate the August 31, 1977, Order on the grounds that it was a preliminary injunction issued without proper notice. Since a temporary restraining order may remain in effect for a maximum of 20 days unless extended by agreement of the parties, the Court held a hearing on September 19, 1977, on the issue of whether a preliminary injunction should issue pending a final resolution of the case on the merits.

On September 20, 1977, the Court issued a written order holding: (1) that abstention was inappropriate; (2) that dismissal for want of a substantial federal question was not appropriate at that stage in the proceedings; and (3) that plaintiffs on the state of the record at that time met the criteria for issuance of a preliminary injunction. In addition, the Court set a briefing schedule and a trial date of October 25, 1977. Subsequently, defendant Commissioners' Court appealed the preliminary injunction, thereby depriving this Court of jurisdiction to proceed with trial on October 25, 1977, and on November 3, 1977, the United States Court of Appeals for the Fifth Circuit denied defendants' appeal without a written order.

On February 15, 1978, the parties submitted a joint pretrial order containing a stipulation of facts, a list of contested issues of law, and an agreed briefing schedule providing that all briefing would be accomplished by April 1, 1978.

After consideration of the many voluminous briefs submitted by the parties throughout the course of this litigation and examination of the relevant statutory and case authority, the Court concludes that the massage parlor regulations enacted by the Harris County Commissioners' Court are constitutional in their entirety under both the Texas and United States Constitutions, but that the § 8(b) prohibition of transsexual massages exceeds the scope of authority delegated to the Commissioners' Court by the state legislature through Tex.Rev.Civ. Stat.Ann. art. 2372v (1977). Accordingly, since these regulations contain a severability clause, enforcement of § 8(b) will be permanently enjoined, and the remainder of the regulations will take immediate effect.

## II. JURISDICTION: ABSTENTION AND FEDERAL QUESTION DOCTRINES

■ Defendants continue to urge, as they did at the preliminary injunction hearing, that this is a proper case for abstention, or, in the alternative, that the case should be dismissed for want of a substantial federal question. In the September 20th Order defendants' abstention arguments were considered and rejected on the grounds that abstention under *Younger v. Harris* is inappropriate in the absence of a pending state proceeding at the time the federal suit is commenced. *Joseph v. Blair,* 482 F.2d 575 (4th Cir. 1973), *rehearing denied,* 488 F.2d 403, *cert. denied,* 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974). Given the Court of Appeals' denial of defendants' appeal, this Court is of the opinion that its September 20th decision rejecting abstention on the basis of *Joseph v. Blair, supra,* is correct.

■ Defendants' argument that the case should be dismissed for want of a substantial federal question is premised on *Tomlinson v. Mayor and Aldermen of City of Savannah,* 543 F.2d 570 (5th Cir. 1976), and *Hogge v. Johnson,* 526 F.2d 833 (4th Cir. 1975), wherein the courts dismissed similar constitutional challenges raised against massage parlor ordinances for want of a substantial federal question. In its September 20th Order this Court refused to follow a similar course of action on the grounds that while some of the challenges raised in *Tomlinson* and *Hogge* parallel those made against the Harris County regulations, numerous other federal issues are raised by plaintiffs in this case. Because the decisions in *Tomlinson* and *Hogge* did not on their face compel dismissal for want of a substantial federal question, this Court held that an in-depth analysis of the substantial federal question doctrine was premature when the narrow question before the Court was whether a preliminary injunction should issue. Subsequent analysis

of the merits of plaintiffs' federal constitutional challenges, although resulting in the conclusion that the ordinances are not constitutionally infirm, confirms the Court's earlier conclusion that they raise issues not previously addressed by federal courts in the same context. Accordingly, dismissal on jurisdictional grounds without consideration of these issues on the merits would be improper.

### III. SUBSTANTIVE DUE PROCESS: ANALYSIS OF STATE POLICE POWER

Plaintiffs urge that the massage parlor regulations violate the substantive due process provisions of the Texas and United States Constitutions in that they (1) constitute an unconstitutional "taking" of vested property rights without due process of law, (2) deprive plaintiffs of their fundamental rights without a compelling state interest and (3) act in a retroactive manner. Examination of both state and federal case law compels the conclusion that the regulations constitute a valid exercise of the state police power and do not transgress plaintiffs' substantive due process rights.

A clear statement of the scope and import of the state police power was made in the recent case of *Comtronics, Inc. v. Puerto Rico Telegraph Company,* 409 F.Supp. 800, 809 (D.P.R.1975), *aff'd,* 553 F.2d 701 (1st Cir. 1977):

"The right to exercise the police power is a continuing one. It is one of the essential powers of government and the imperative necessity for its existence precludes any limitation upon it unless it be arbitrarily exercised. It is probably the last limitable of governmental powers, even though in its operation it often cuts down property rights, and is capable of being exercised to legislate retroactively without offending due process. Thus, it is that a vested interest in existing conditions, be it a license to operate a business, existing building codes or zoning regulations, present rates of interest, health regulations, or whatever, cannot be asserted against the proper exercise of the police power."

Both state and federal case authority are legion in their statement of the general principle that:

"[The] Legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power."

*Nebbia v. New York,* 291 U.S. 502, 538, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934). *See Texas State Board of Barber Examiners v. Beaumont Barber College, Inc.,* 454 S.W.2d 729 (Tex.1970). As these cases demonstrate, the state's police power encompasses the authority to pass legislation aimed at regulating the health, welfare and morals of the community, and it is not the province of a court to weigh the policy arguments in favor of or against the regulations or to determine whether the same ends could be reached through different or less onerous restrictions. Rather, the proper inquiry is whether the challenged regulations bear a rational relation to a legitimate state end; if so, they should be upheld unless they are so arbitrary or unreasonable as to be irrational.

In recent years massage parlors have come under increasing legislative scrutiny and have been the subject of extensive regulation. While these regulations vary in their scope and detail, they have been consistently upheld by the courts against substantive due process attack, despite the fact that in many instances their implementation has had the effect of severely restricting or even terminating the massage parlor enterprises. *See Rubenstein v. Township of Cherry Hill,* 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136 (1974); *Tomlinson v. Mayor and Aldermen of City of Savannah,* 543 F.2d 570 (5th Cir. 1976); *Smith v. Keator,* 285 N.C. 530, 206 S.E.2d 203 (1974), *appeal dism'd,* 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974); *Kisley v. City of Falls Church,* 212 Va. 693, 187 S.E.2d 168 (1972), *appeal dism'd,* 409 U.S. 907, 93 S.Ct. 237, 34

L.Ed.2d 169 (1972); *Patterson v. City of Dallas,* 355 S.W.2d 838 (Tex.Civ.App.—Dallas 1962, *writ ref'd n. r. e.), appeal dism'd,* 372 U.S. 251, 83 S.Ct. 873, 9 L.Ed.2d 732 (1963). These cases reflect a judicial policy of according great deference and latitude to the legislative branch in regulating massage parlors pursuant to the police power.

In *Kisley,* the United States Supreme Court dismissed for want of a substantial federal question an appeal from a decision of the Supreme Court of Virginia rejecting due process and equal protection challenges to a city massage parlor ordinance. The Virginia Supreme Court quoted the case of *Ex Parte Maki,* 56 Cal.App.2d 635, 133 P.2d 64 (1943), in its discussion of the plaintiff's argument that the challenged ordinance deprived him of his property without due process:

> "[T]he reasonable exercise of the police power in regulating any occupation in order to maintain the moral welfare does not arbitrarily deprive a person so engaged of his property. . . . Enactments that curb the vicious or restrain the wicked necessarily restrict the emoluments of his enterprise. However, such results are not to be considered in determining the validity of a law."

187 S.E.2d at 171.

■ Analysis of the challenged portions of the instant regulations in the light of the above-stated standards and legal precedent dictates the conclusion that the regulations bear a rationale connection to a legitimate police power objective and that they are not so arbitrary and unreasonable as to be unconstitutional.

## IV. FREEDOM OF PERSONAL APPEARANCE

■■ Plaintiffs argue that the § 19 regulation governing clothing to be worn by massagers violates their freedom of personal appearance as protected by the First, Fifth, Ninth and Fourteenth Amendments of the United States Constitution.[1] Although courts have looked to several different amendments in passing upon the constitutionality of legislation affecting personal appearance, the test appears to be the same test of reasonableness used in substantive due process analysis as discussed above. The most recent United States Supreme Court statement concerning the constitutionality of regulations controlling personal appearance is the case of *Kelley v. Johnson,* 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976), wherein police grooming standards were upheld as a valid exercise of the state's police power.

> "Choice of organization, dress, and equipment for law enforcement personnel is a decision entitled to the same sort of presumption of legislative validity as are state choices designed to promote other aims within the cognizance of the state's police power. . . . Having recognized in other contexts the wide latitude accorded to government in the 'dispatch of its own internal affairs' . . . we think . . . [the] regulations involved here are entitled to similar weight."

*Id.* at 247, 96 S.Ct. at 1445. The Court went on to reject the lower court's test of whether the state can establish a genuine public need for the regulation and instead held that the proper test is whether there is a rational connection between the regulation and proper police objectives. Clearly it can be said there is a rational basis for the conclusion that the regulation of provocative dress furthers the legitimate state interest in assuring that massage parlors are not mere subterfuges for prostitution. Given the presumption of validity that must be

1. Section 19 provides, in pertinent part:
 "The male massagers shall wear all white slacks and all white shirt and the female massagers shall wear an all white dress or all white slacks and all white blouse while engaged in the treatment of a patron. An all white surgical gown or smock may be substituted. Said clothing shall at least cover the massager's pubic area, perineum, buttocks, natal cleft and entire chest to four inches below the collarbone and legs not exposed more than six inches above the knees. The massager's clothing shall be kept clean at all times, and soiled clothing shall not be worn during the treatment of a patron. The massager's clothing shall be opaque."

accorded such legislative enactments, the Court concludes that the dress regulations contained in the massage parlor regulations are not unconstitutional.

## V. RIGHT OF PRIVACY

Plaintiffs argue that the massage parlor regulations of Harris County invade their constitutional right of privacy, which guarantees the right of individuals to determine for themselves whether to undergo certain experiences or perform certain acts and which also guarantees "disclosural privacy," the right to control the disclosure of personal information. Plaintiffs rely on the landmark cases of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1927), and *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), for the proposition that the requirement of tabulation and submission of extensive information concerning the owners and patrons of massage parlor establishments and the prohibition of locked doors at such establishments during business hours or while massages are being performed unconstitutionally violates their right of privacy. The above-cited cases, however, deal with quite different privacy infringements and do not support plaintiffs' contention that the regulated activities in the present case come within a constitutionally protected "zone of privacy".

■■■ Even if the Court were to conclude that the challenged activities fall within a protected "zone of privacy," this would not automatically dictate a finding that the regulations are unconstitutional, for as the Supreme Court has stated:

> "[T]he Court's decisions recognizing a right of privacy also acknowledge that some state regulation in the areas protected by that right is appropriate."

*Roe v. Wade,* 410 U.S. at 153–54, 93 S.Ct. at 727. As discussed in Part III, *supra,* the exercise of the police power may restrict, limit or infringe upon both personal and property rights. But as long as the state activity is not arbitrary or unreasonable and bears a rational relationship to the legitimate state interest in regulating the health, welfare and morals, it must be upheld. The Court concludes, therefore, that even if constitutionally protected privacy rights are affected by the massage parlor regulations, the regulations are nonetheless valid.

## VI. PROCEDURAL DUE PROCESS: NOTICE AND HEARING REQUIREMENTS

■■■ Plaintiffs argue that the notice and hearing requirements made part of the licensing provisions of the Harris County Massage Parlor Regulations are unconstitutional on the grounds that they do not provide adequate notice and hearing prior to revocation of a license. Such an argument is untenable, however, since revocation is stayed pending an appeal pursuant to Sections 45 and 46 of the regulations. Thus, although the Sheriff may revoke a license without a hearing following noncompliance with the ordinance, this revocation is automatically stayed if the licensee appeals the Sheriff's decision. That this is the equivalent of a hearing prior to revocation is mandated by both the Texas Supreme Court, *see Gillaspie v. Department of Public Safety,* 152 Tex. 459, 259 S.W.2d 177 (1953), and the United States Supreme Court, *see Porter v. Investors Syndicate,* 286 U.S. 461, 52 S.Ct. 617, 76 L.Ed. 1226 (1932).

Other objections raised to the hearing procedures delineated in the massage parlor regulations are equally unsupportable. Plaintiffs' attempt to equate a revocation hearing to a criminal proceeding is unpersuasive since, although a violation of the massage parlor regulations may result in a criminal charge, a revocation hearing is purely civil in nature. Even if revocation is upheld at a hearing, criminal sanctions may be imposed only after criminal charges have been filed and pursued in accordance with applicable Texas substantive and procedural law. Thus, rules of evidence and procedure applicable in Texas criminal proceedings

need not be followed in a revocation hearing which at most may have only civil consequences.

 Furthermore, in *Smith v. Keator,* 285 N.C. 530, 206 S.E.2d 203 (1974), *aff'd on appeal,* 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974), the Supreme Court dismissed for lack of a substantial federal question an appeal from a judgment of the Supreme Court of North Carolina dismissing an argument that the Fayetteville massage parlor ordinances were unconstitutional because they failed to explicitly provide for a hearing for licensees who stood to have their licenses revoked. Prefacing its discussion of this procedural due process issue with a reference to the well-established rule that a statute or ordinance is to be construed as constitutional whenever possible, the North Carolina Supreme Court construed the ordinance so as to allow for a licensee to appear before the City Council prior to the revocation of his license. Far from providing for a jury trial, right to counsel, confrontation, cross-examination and evidentiary rules, the Fayetteville ordinance did not even explicitly provide for a hearing. Yet the right to a hearing was read into the ordinance, and it was upheld by the United States Supreme Court against a procedural due process attack. The Harris County regulations involved in the instant case specifically provide for notice, hearing and appeal; therefore, the Court has no difficulty in concluding that the absence of procedural safeguards required in other contexts does not result in a constitutional deprivation.

## VII. CONSTITUTIONAL REQUIREMENTS OF A CRIMINAL STATUTE: VAGUENESS AND CULPABLE MENTAL STATE

Plaintiffs contend that both article 2372v and the Harris County massage parlor regulations are unconstitutional because they are vague, indefinite, lack the notice required of a criminal statute and fail to provide for a culpable mental state. Plaintiffs' argument that the state enabling statute, article 2372v, is unconstitutionally vague in that it provides great latitude to the commissioners' courts in implementing massage parlor regulations is totally devoid of merit. While the definiteness of the enabling act is relevant to a determination of the separation of powers challenge raised by plaintiffs and discussed in Part VIII, *infra,* the enabling act itself need not meet the constitutional definiteness standards required of a criminal statute. The reasoning underlying the requirement that criminal statutes meet a certain standard of definiteness was enunciated by the Supreme Court in the case of *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954):

> "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."

*Id.* at 617, 74 S.Ct. at 812.

 Article 2372v is not a criminal statute, however, as it merely serves as an enabling act which provides the county commissioners' courts of the state with the authority to pass criminal regulations, if they so choose. No one may be prosecuted pursuant to article 2372v alone. It is only upon the promulgation of criminal regulations by the commissioners' court that a violation of such regulations becomes a Class B misdemeanor. Thus, until the commissioners' court of a county exercises the authority given it by article 2372v, no conduct is made criminal. When, as in the instant case, a commissioners' court exercises this authority and adopts regulations, it is the regulations, not the enabling act, which must be sufficiently definite to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. Accordingly, this Court must reject plaintiffs' contention that article 2372v is unconstitutionally vague.

As stated above, the regulations adopted by the Harris County Commissioners' Court

must provide sufficient notice of proscribed conduct. Plaintiffs assert that many of the provisions do not meet this standard. They point to the provision in § 9 which states that "it shall be unlawful for any person operating a massage establishment to permit or allow an employee, agent or massager thereof, or any person whatever, to violate these regulations on the premises of the massage establishment." Plaintiffs argue that the reference to "any person operating a massage establishment" is impermissibly vague. In addition, plaintiffs claim that the § 9 requirement of modern and approved methods of sterilization for equipment used by a massage parlor is impermissibly vague for failing to specify what constitutes a "modern or approved method of sterilization". Plaintiffs also object to the lack of definition of communicable disease in § 15; the lack of definition of massage table or treatment table in § 16; the lack of definition of opaque clothing in § 19; the absence of language in § 19 indicating whether certain clothing restrictions are applicable to male massagers, female massagers, or both; and the § 20 proviso that:

"[N]othing contained herein shall be construed to eliminate other requirements of statute or ordinance concerning the maintenance of premises"

on the grounds that this constitutes an impermissibly vague adoption by reference of other statutes or ordinances.

In the recent case of *Deinlein v. District of Columbia,* 23 Crim.L.Rep. (BNA) 2147 (D.C. Cir. 1978), the Court of Appeals for the District of Columbia rejected an argument that the lack of a definition of the word "massage" in the District of Columbia massage parlor ordinance made the ordinance unconstitutionally vague. Applying the *Harriss* test, the Court concluded that a person of ordinary intelligence would reasonably understand what conduct came within the purview of the term "massage". Without addressing each individual provision challenged by plaintiffs on these grounds, the Court similarly concludes that none of the questioned provisions in the instant case is so vague as to fail to provide

sufficient notice. As the Court held in *Boyce Motor Lines v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952):

"A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."

Plaintiffs also contend that the Harris County massage parlor regulations violate the due process provisions of the United States and Texas Constitutions in that they provide for criminal responsibility without requiring a culpable mental state. This contention is without merit, however, as article 2372v must be read in conjunction with Tex.Penal Code Ann. § 6.02(b)(1974) which provides:

"[I]f the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element."

In the case of *Hazel v. State,* 534 S.W.2d 698 (Tex.Cr.App.1976), the Court found that a penal code provision making it a crime to carry a weapon without requiring a culpable mental state must have the requirement of a culpable mental state read into it pursuant to § 6.02 of the Penal Code. Like *Hazel,* the instant offense fails to require a culpable mental state. Nonetheless, pursuant to § 6.02(b), the requirement of a culpable mental state must be read into the

regulations as a necessary element in the proof of a crime committed in contravention of its provisions. Accordingly, the lack of an explicit culpability element does not invalidate the criminal provisions of the massage parlor regulations.

## VIII. SEPARATION OF POWERS

Plaintiffs argue that article 2372v and the Harris County massage parlor regulations violate the doctrine of separation of powers as embodied in the Constitution of the United States and expressly provided for in Article II, Section 1, of the Constitution of the State of Texas. Although the doctrine of separation of powers is not explicitly contained in the United States Constitution, it is specifically stated in Article II, Section 1, of the Texas Constitution which provides:

"The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

That this doctrine is not absolute in its application is evidenced in the interpretative commentary which follows it:

"[D]espite the fact that the principle of separation of powers is accepted as binding and prohibits blending of the powers of the three departments, still the practical necessities of efficient government have prevented its complete application. . . . Thus, it is not exactly correct to state the principle of separation of powers as absolutely prohibiting performance by one department of acts which by their essential nature belong to another."

Plaintiffs argue that since the commissioners' courts are created as part of the judiciary under article 5, section 18, of the Texas Constitution and act predominantly in an administrative manner in accordance with Article 2351, Tex.Rev.Civ.Stat.Ann. (1971), any attempt by the the legislature to convey to the courts legislative functions is unconstitutional. Despite its name, however, the county commissioners' court is not a purely judicial entity. As the interpretive commentary to article 5, section 18, states:

"[T]he county commissioners' court, then, has none of the functions of a court, but is the general governing body of the county."

In *Collingsworth County v. Myers*, 35 S.W. 414 (Tex.Civ.App.1896, *no writ*), the Court of Appeals discussed the legislative functions of the commissioners' court:

"Each county is an integral part of the state, and, as such, is endowed with a certain amount of sovereignty; and the legislative power of the county is placed by the constitution and the laws of the state in the commissioners' court."

*Id.* at 415–16. Given the quasi-legislative nature of the commissioners' court, and the recognition in the above-cited interpretative commentary that efficient operation of government requires some overlapping of functions between the three branches of government, the Court concludes that strict application of the separation of powers doctrine is inappropriate in the present case.

However, even if the commissioners' courts are treated as purely judicial in nature and the separation of powers doctrine is strictly applied, the Court finds no unconstitutional delegation of legislative authority. The general rule in determining whether an act constitutes a violation of the separation of powers doctrine is stated in the case of *McCombs v. Dallas County*, 136 S.W.2d 975 (Tex.Civ.App.—Dallas 1940, *writ ref'd*)

"The rule is announced in 11 Am.Jur. 924, § 215, that: 'one of the most important tests as to whether particular laws amount to an invalid delegation of legislative power is found in the completeness of the statute as it appears when it leaves the hands of the legislature. The generally recognized principle is that a law must be so complete in all its terms and

provisions when it leaves the legislative branch of the government that nothing is left to the judgment of the electors or other appointee or delegate of the legislature. The rights, duties, privileges or obligations granted or imposed must be definitely fixed or determined, or the rules by which they are to be fixed or determined, must be clearly and definitely established, when the act is passed by the legislature and approved by the governor. The law must be perfect, final and decisive in all of its parts, and the discretion which is given must relate only to execution.' "

*Id.* at 978–79. In *McCombs*, a state statute which gave the counties one-half of the ad valorem taxes levied and collected by the state for general revenue purposes was held invalid on the grounds that it constituted an unconstitutional delegation of legislative authority and also because it conferred on the commissioners' courts jurisdiction over matters other than strictly county business.

 The facts of the present case are easily distinguishable from *McCombs*, wherein the revenues given to the commissioners' court carried with them the delegation of general spending power for any purposes not specifically prohibited by the Constitution. Such general spending power gave the commissioners' courts wide latitude and discretion to formulate and implement legislative spending programs. In the instant situation, however, article 2372v delegates much less discretion to the commissioners' courts. It gives them authority to adopt regulations which provide for licensing and regulation of massage parlors in a manner consistent with the police power and specifically exempts certain individuals from such regulations.[2] The statute is confined by its terms to the regulation of massage parlors and leaves much less discretion to the commissioners' courts than

the general spending authority overturned in *McCombs*. Accordingly, the Court concludes that article 2372v does not violate the constitutional doctrine of separation of powers.

## IX. AUTHORITY DELEGATED TO THE COMMISSIONERS' COURT BY THE STATE LEGISLATURE

 Plaintiffs argue that many of the provisions of the Harris County massage parlor regulations exceed the scope of the authority delegated to the Commissioners' Court by the state legislature through article 2372v. Plaintiffs point to the fact that counties can exercise only that authority which has been delegated to them by the constitution or legislature, as stated by the Texas Supreme Court in *Canales v. Laughlin*, 147 Tex. 169, 214 S.W.2d 451, 453 (1948):

"The Constitution does not confer on the commissioners' courts 'general authority over the county business' and such court can exercise only such powers as the Constitution itself or the statutes have 'specifically conferred upon them. . . .' While the commissioners courts have a broad discretion in exercising powers expressly conferred on them, nevertheless the legal basis for any action by any such court must be ultimately found in the Constitution or the statutes."

Unlike home-rule cities, which have been given general police power by the legislature through art. 1175(34) Tex.Rev.Civ.Stat. Ann. (1963), counties have no such general police power. *See Commissioners' Court of Harris County v. Kaiser*, 23 S.W.2d 840 (Tex.Civ.App.—Galveston 1929, *writ ref'd*). All county ordinances, therefore, must find their genesis in specific legislative or constitutional language.

---

**2.** Section 5 of the regulations provide:

"(a) These Regulations do not apply to a licensed physical therapist, a licensed athletic trainer, a licensed cosmetologist or a licensed barber performing functions authorized under the license held, nor do these Regulations apply to a licensed physician or chiropractor, or any individual working under the direct supervision of a licensed physician or chiropractor, while engaged in practicing the healing arts.

"(b) These regulations do not apply to the administration of massage for therapeutic purposes in a hospital, nursing home, or other health care facility."

**608**

Defendants assert that all of the provisions of the Harris County massage parlor regulations come within either the specific enumerated provisions of art. 2372v, or within the "catch-all" provision of § 2(b)(6) which provides for the adoption of "any other reasonable procedures or prohibitions consistent with the police power to protect the public health and safety and to prevent violations of state law." Thus, resolution of this issue requires interpretation and application of § 2(b)(6) in the light of the challenged provisions.

■ Resort to legislative history to determine the meaning of a statute in certain situations is mandated by Texas legislative and judicial authority. *See* Article 5429b–2 § 3.03(3) Tex.Rev.Civ.Stat.Ann. (1967); *Harris v. City of Fort Worth*, 142 Tex. 600, 180 S.W.2d 131 (1944); *Sabine Pilots Assoc. v. Lykes Brothers Steamship, Inc.*, 346 S.W.2d 166 (Tex.Civ.App.—Austin 1961, *no writ*). As the Texas Supreme Court stated in *Harris*:

> "[When] the language used in the Constitution or in an Act leaves its intent obscure, the courts may resort to certain aids in the construction of same, such as the purpose sought to be accomplished, the history of the legislation, the public policy of the State in regard thereto, etc."

180 S.W.2d at 133. Thus, a pivotal factor that the court must look to in determining whether or not to consider legislative history in the construction of a statute is whether its meaning is ambiguous or obscure.

■ Defendants argue that the phrase "any other reasonable procedures or prohibitions consistent with the police power to protect the public health and safety and to prevent violations of state law" unambiguously authorizes the commissioners' court to adopt regulations prohibiting transsexual massages. The Court is unable to accept this view, however, as the term "reasonable procedures" provides a somewhat vague and amorphous standard which should be analyzed with an eye towards legislative intent as made manifest through the legislative history.

An examination of the legislative history of article 2372v reveals no basis for the conclusion that any of the challenged provisions, with the exception of the prohibition of transsexual massages contained in § 8(b), contravene the legislative intent to provide some discretion to the commissioners' courts through the "catch-all" provision of § 2(b)(6). A provision granting the commissioners' courts the explicit authority to prohibit transsexual massages was, however, hotly debated between the House and the Senate and was specifically deleted from the bill as finally passed.

The deposition of Craig A. Washington, State Representative for the 86th Legislative District and member of the House-Senate Conference Committee which considered the massage parlor statute, was taken on January 19, 1978, by the parties in the instant suit. The Court is aware of Washington's opposition to the bill in it entirety but nonetheless concludes that his unrebutted recitation of the legislative history of the bill, buttressed by other documentation is accurate.

In his deposition Washington testified that the most significant difference between the House and Senate versions of article 2372v was that the House version contained a provision specifically authorizing the county commissioners' courts to prohibit transsexual massages. *See* Conference Committee Report on House Bill 34, 65th Legislature, Regular Session (1977). This version was rejected by the Senate, and a conference committee composed of Washington and other House and Senate members was convened to resolve the differences. Washington testified in his deposition that:

> "[The] Senate [members of the conference committee] told them [the House members] point blank that they had enough votes to kill the bill and either pass it without the [transsexual prohibition] provision in there or don't pass the bill at all."

Washington Deposition at p. 46.

Accordingly, the version approved by the conference committee and ultimately

passed by both the House and Senate did not contain a provision authorizing the commissioners' courts to prohibit transsexual massages. Despite the fact that such an authorizing provision was specifically deleted, defendants urge that such a provision comes within the "other reasonable procedures" of § 2(b)(6). The legislative history belies such a construction, however, as the following colloquy at Washington's deposition reveals:

"A: [The] legislative intent was that that provision not be made a part of the law; that counties being a subdivision in the state of Texas and only having such authority as vested in them by the legislature; that the legislative intent of the House adopting the conference committee report on House Bill 34 was to eliminate the possibility of the county enacting ordinances pursuant to this statutory authority . . .

"Q: Now, to your knowledge, was it the intent of the conference committee, under section 2b6, to allow the counties the authority to prohibit transsexual massaging?

"A: Most definitely not.

"Q: What is the basis of your opinion?

"A: Well, I am unequivocally certain that it was the opinion and agreement of the conferees that that provision be taken out. We wouldn't take it out in one form and put it back in another."

*Id.* at 38–44.

In the absence of any evidence presented by defendants of contrary legislative intent, the Court is compelled to conclude that the fact that the very provision in question was stricken by the conference committee despite resistance from House sponsors requires that the "other reasonable procedures provision" not be construed so as to allow the Commissioners' Court the implicit power to do what they were explicitly not given the power to do. Accordingly, the prohibition of transsexual massages contained in § 8(b) of the Harris County massage parlor regulations is invalid, as it exceeds the authority delegated to the Commissioners' Court by the legislature in article 2372v.

It should be noted, however, that the transsexual prohibition provision is constitutional and has been upheld in other contexts by both the Fifth Circuit, *see Tomlinson v. Mayor and Aldermen of City of Savannah*, 543 F.2d 570 (5th Cir. 1976), and the United States Supreme Court, *see Kisley v. City of Falls Church*, 212 Va. 693, 187 S.E.2d 168 (1972), *appeal dism'd*, 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169 (1972). Thus, there is no constitutional impediment to a transsexual massage prohibition; the legislature could delegate authority to the commissioners' courts for such a provision. This Court's ruling invalidating this provision is premised solely on the finding that the Commissioners' Court was not delegated the requisite authority in this instance.

## X. CONCLUSION

In conclusion, the Court finds that abstention is inappropriate due to the absence of a pending state proceeding. Additionally, although some of the constitutional challenges levelled at the Harris County regulations have been dismissed by the United States Supreme Court in other cases for lack of a substantial federal question, other federal issues raised by plaintiffs in this case have not been resolved in a similar context and warrant consideration on the merits. Analysis of these federal constitutional challenges and related state constitutional challenges reveals, however, that the regulations constitute a valid exercise of the police power and contain no constitutional infirmities. Nonetheless, despite its constitutionality, the § 8(b) prohibition of transsexual massages exceeds the authority delegated to the Commissioners' Court by the legislature. Accordingly, pursuant to the severability provision contained in the regulations, § 8(b) is hereby declared invalid. The Court's preliminary injunction issued September 20, 1977, is lifted as to the remainder of the Harris County massage parlor regulations, and they will take full force and effect instanter.