**Magalene HARPER, d/b/a Nugents Health Clinic, et al., Plaintiffs,**

**Anchor Baths, Inc., et al., Plaintiffs-Appellants.**

v.

**Jon LINDSAY et al., Defendants-Appellees.**

No. 78–2305.

United States Court of Appeals, Fifth Circuit.

May 9, 1980.

Clyde W. Woody, Mary M. Rawlins, Houston, Tex., for plaintiffs-appellants.

Joe Resweber, County Atty., Richard C. Beu, Billy E. Lee, Houston, Tex., for Jon Lindsay, Tom Bass, James Fonteno, R. Y. Eckels & E. A. Lyons, Jr.

Clyde F. DeWitt, III, Asst. Dist. Atty., Houston, Tex., for Jack Heard & Carol S. Vance.

Before GEE, FAY and VANCE, Circuit Judges.

FAY, Circuit Judge:

Appellants,[1] "massage establishments" and "massagers," engage in "the rubbing, kneading, tapping, compression, vibration, application of friction, or percussion of the human body or parts of it by hand or with an instrument or apparatus."[2] They ask this court to determine the constitutionality of comprehensive regulations governing the operation of massage parlors in Harris County, Texas.

The case presents a touchy situation, and our decision is likely to rub some of the parties the wrong way. We shall attempt, however, to apply the soothing balm of reason to the knotty issues before us in an effort to ease the tensions that have arisen.

We hold that all but one provision of Harris County's challenged massage parlor regulations are constitutional.[3] Because we find no rational basis for the requirement of a six-inch by six-inch unobstructed opening on all interior doors of a massage parlor, we hold that particular provision to be unconstitutional. We thus affirm for the most part, and reverse in small part the district court's determination of constitutionality.

## I. Facts and Proceedings

In 1977 the Texas legislature enacted a statute authorizing the "commissioners court of any county . . . [to] adopt regulations applicable to the practice of massage and operation of massage establishments . . . ." Tex.Rev.Civ.Stat. Ann. art. 2372v, § 2(a) (Vernon) (Supp.1979) (hereinafter article 2372v). The massage parlor legislation was intended to curb the steady increase in the number of massage

---

1. Appellant massage parlors entice us with their names: Anchor Baths, Inc., Joy's House of Massage, Parisian Spa, California Spa, Hollywood Spa, Roman Spa, Airport Spa, Enchanted Spa, Japaneese Bath, and the Palms. The individual appellants, Carmen Perez, Stella (Scott) Littleton, and Olga Aguilar, are masseuses.

2. Definition of "massage," Regulations of Harris County, Texas, for Massage Parlors, Part I, § 4(4) (1977). A "massager" or "masseur" is an individual who administers massages for compensation. Id. §§ 4(5), 4(8). A "massage establishment" or "massage parlor" is a business establishment where massagers practice massage. Id. §§ 4(6), 4(7).

3. We emphasize at the outset that this holding does not take into account the invalidity of section 8(b) of the regulations, discussed infra. Although section 8(b) is included in the appendix to this opinion, it has already been held invalid and is not at issue in this appeal. Our holding—that all but one of the challenged regulations are constitutional—refers only to those regulations challenged in this appeal. If our decision is viewed in conjunction with the district court's opinion at 454 F.Supp. 597 (S.D. Tex.1978), both section 8(b) and the six-inch by six-inch window requirement of section 20 are invalid.

parlors in the state, many of which operated as houses of prostitution.[4]

Pursuant to the statutory authorization of article 2372v, the Commissioners Court of Harris County, Texas adopted a comprehensive set of regulations for massage parlors on July 21, 1977, with enforcement to begin on September 1, 1977. These regulations were challenged on August 29, 1977 when Magalene Harper and twenty-one other named plaintiffs, on behalf of themselves and all others similarly situated, filed suit in district court against the individual members of the Harris County Commissioners Court, the Harris County sheriff, and the Harris County district attorney. Plaintiffs (appellants before us) alleged that certain provisions of the county's massage parlor regulations exceeded the legislative authority of the Commissioners Court, and that enforcement of the regulations would violate plaintiffs' constitutional and statutory rights. The complaint sought a declaratory judgment, permanent injunction, and damages, along with a temporary restraining order and a preliminary injunction enjoining enforcement of the regulations pending trial on the merits.

On August 31, 1977, counsel for the Harris County sheriff and district attorney agreed to the issuance of a temporary restraining order for a period of sixty days pursuant to Fed.R.Civ.P. 65 in order to maintain the status quo until the necessary briefing of the numerous legal questions raised by plaintiffs could be accomplished.

On September 9, 1977, counsel for the Commissioners Court filed a motion to vacate the temporary restraining order, contending that it was a preliminary injunction issued without proper notice. Since a temporary restraining order may remain in effect for a maximum of twenty days unless extended by agreement of the parties, see Fed.R.Civ.P. 65(b), the district court held a

hearing on September 19, 1977, to determine whether a preliminary injunction should issue pending a final resolution of the case on the merits. The next day, September 20, the court issued a written order holding: (1) that the case was not a proper one for the exercise of abstention; (2) that dismissal for want of a substantial federal question was not appropriate at this stage of the proceedings; and (3) that on the state of the record plaintiffs met the criteria for issuance of a preliminary injunction. Record, vol. 2, at 250. In addition, the court set a briefing schedule and a trial date of October 25, 1977. Subsequently, defendant Commissioners Court appealed the preliminary injunction. On November 3, 1977, this court denied defendants' petition for writ of mandamus and application for stay of the preliminary injunction pending appeal. Record, vol. II, at 41–42.

On February 15, 1978, the parties submitted a joint pretrial order containing a stipulation of facts, a list of contested issues of law, and a briefing schedule with an April 1, 1978 completion date.

The district court considered the numerous voluminous briefs submitted by the parties throughout the litigation, and examined the relevant statutory and case authority. The court concluded that Harris County's massage parlor regulations were constitutional in their entirety under both the Texas and United States Constitutions; however, the prohibition of transsexual massages in section 8(b) of the regulations[5] was determined to exceed the scope of authority delegated to the Commissioners Court by the Texas legislature in article 2372v. *Harper v. Lindsay*, 454 F.Supp. 597, 600 (S.D. Tex.1978). Since the regulations contain a severability clause, the court permanently enjoined enforcement of section 8(b) and ordered that the remainder of the regulations take immediate effect. *Id.* at 600.

---

4. *See* Intergovernmental Relations Committee, Hearing on Senate Bill 173, 65th [Texas] Legislature, March 8, 1977; Intergovernmental Relations Committee, Hearing on House Bill 34, 65th [Texas] Legislature, March 22, 1977. The legislative history of the statute is included in

the record of this case. *See* Record, vol. I, at 205–28.

5. *See* section 8 of the Regulations of Harris County, Texas, for Massage Parlors, set out in full in the appendix to this decision.

Appellants continue to challenge the constitutionality of the massage parlor regulations, raising several points of error on appeal. Neither party appeals the district court's finding that the case was not a proper one for abstention, and no appeal has been taken from the court's determination that section 8(b) of the regulations is invalid.

The prevailing law in this circuit indicates that all but one of Harris County's massage parlor regulations pass constitutional testing. Affirming the major portion and reversing in part the judgment of the district court, we now undertake a point-by-point analysis of the challenged regulations.

## II. The Regulations Do Not Exceed the Authority Delegated to the Commissioners Court by the State Legislature

Appellants contend that certain provisions of the Harris County regulations exceed the scope of authority delegated to the Commissioners Court by the Texas legislature. Pointing out that counties in Texas can exercise only those powers which are specifically conferred upon them by the state's constitution and statutes, *see, e. g.*, *Canales v. Laughlin*, 147 Tex. 169, 214 S.W.2d 451 (1948), appellants argue that sections 9, 11, 12, 13, 17, 18, 20, 31 and 53 of the regulations [6] go beyond the grant of power contained in article 2372v of the Texas statutes.[7]

The district court examined the legislative history of article 2372v and determined that all of the Harris County massage parlor regulations came within either the specific enumerated provisions of 2372v or within the "catch-all" provision of section 2(b)(6), which permits the commissioners courts to "establish any other reasonable procedures or prohibitions consistent with the police power to protect the public health and safety and to prevent violations of state law." The court noted that none of the challenged regulations [8] contravened the legislative intent to provide some discretion to the commissioners court through the section 2(b)(6) "catch-all." *Harper v. Lindsay*, 454 F.Supp. at 608.

Appellants argue that section 2(b)(6) is too vague and fails to establish a standard by which regulations may be made. We agree with the district court that "the term 'reasonable procedures' [in section 2(b)(6)] provides a somewhat vague and amorphous standard which should be analyzed with an eye towards legislative intent as made manifest through the legislative history." *Id.* at 608. The legislative history clearly reveals the intent behind article 2372v: to allow counties to reasonably regulate massage parlors and to discourage

---

**6.** Appendix.

**7.** The pertinent portion of the Texas massage parlor statute provides:

**Adoption of regulations; penalty for violations**
Sec. 2. (a) The commissioners court of any county by order may adopt regulations applicable to the practice of massage and operation of massage establishments in unincorporated territory in the county.
(b) Regulations adopted under this Act may:
(1) require the licensure by the county of massagers and massage establishments and establish reasonable requirements and fees for obtaining a license;
(2) establish standards applicable to the practice of massage and the operation of massage establishments designed to protect public health;
(3) provide procedures for suspending or cancelling the licenses of massagers and massage establishments for violation of a regulation adopted under this Act, for the conviction of an offense defined in Chapter 43, Penal Code, or for the conviction of any other offense reasonably indicating the licensee's unfitness to practice massage or operate a massage establishment;
(4) provide for the inspection of massage establishments;
(5) provide reasonable standards for clothing worn by persons employed by a massage establishment; and
(6) establish any other reasonable procedures or prohibitions consistent with the police power to protect the public health and safety and to prevent violations of state law.
(c) A person who violates a regulation adopted under this Act commits a Class B misdemeanor.
Tex.Rev.Civ.Stat.Ann. art. 2372v (Vernon) (Supp.1979).

**8.** With the exception of Regs. § 8(b), which is not at issue in this appeal.

their use as havens for criminal activity including prostitution and drugs. This intent should be considered in determining whether the procedures and prohibitions established by a county are reasonable.

■ We hold that the Harris County massage parlor regulations do not exceed the authority conferred upon the Commissioners Court by article 2372v. We interpret section 2(b)(6) of that statute to grant counties the power to regulate massage parlors by means calculated to protect the health, safety and welfare of the community. "[C]ommissioners courts have a broad discretion in exercising powers expressly conferred on them . . . ." *Canales v. Laughlin*, 147 Tex. 169, 214 S.W.2d 451, 453 (1948). In this instance that discretion has not been abused.

## III. Only One of the Regulations Exceeds the State's Police Power

Appellants assert that Harris County's massage parlor regulations go beyond the state's police power in that they do not reasonably serve the public health, safety, morals and general welfare. It is urged that the regulations violate state and federal due process guarantees because they (1) constitute an unconstitutional "taking" of vested property rights without due process of law, (2) deprive appellants of their fundamental rights without a compelling state interest, and (3) act in a retroactive manner. Appellants ask us to subject these regulations to a stricter scrutiny than is usually applied to exercises of police power, on the basis that (1) the right to engage in a lawful business falls close if not within the category of fundamental rights, which must be guarded with particular solicitude, and (2) the instant regulations single out the

massage parlor business for discriminatory treatment. Brief for Appellants at 11–12.

■ This court's recent decision in *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978), sets forth the standard to be applied in testing the constitutionality of massage parlor regulations. The *Pollard* court was faced with a challenge to a massage parlor regulatory scheme very similar to the Harris County regulations. It rejected the argument that the right to pursue a legitimate business was "fundamental" for purposes of equal protection analysis.[9] "[T]he theory that classifications affecting the right to pursue a legitimate business demand strict scrutiny flies in the face of the well established rule that state regulations of business or industry are to be reviewed under the less exacting 'rational basis' standard." *Id.* at 1012. *But see Corey v. City of Dallas*, 352 F.Supp. 977 (N.D.Tex.1972), *rev'd on other grounds*, 492 F.2d 496 (5th Cir. 1974). Like *Pollard*, this action neither affects fundamental rights nor involves a traditionally suspect classification. We therefore need only determine whether the massage parlor regulations under attack bear a rational relationship to the broad purposes underlying their enactment. The scope of our review is thus quite narrow.

[T]he state's police power encompasses the authority to pass legislation aimed at regulating the health, welfare and morals of the community, and it is not the province of a court to weigh the policy arguments in favor of or against the regulations or to determine whether the same ends could be reached through different or less onerous restrictions. Rather, the proper inquiry is whether the challenged regulations bear a rational relation to a

---

**9.** The *Pollard* court found appellant's due process attack "clearly without merit in that it attempts to resurrect the long discredited concept of substantive due process and is based specifically upon a 1928 case which the Supreme Court has since overruled and branded 'a derelict in the stream of the law.'" *Pollard v. Cockrell*, 578 F.2d 1002, 1011 (5th Cir. 1978). The 1928 case relied upon was *Liggett Co. v. Baldridge*, 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204 (1928), which was overruled by *North Da-*

*kota State Board of Pharmacy v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973).

As in *Pollard*, appellants in the instant case raise both due process and equal protection arguments; their primary emphasis, however, is on the due process claim. While *Pollard* focused on the equal protection issue before it, the court's "rational basis" analysis is equally applicable to the due process claim before us.

legitimate state end; if so, they should be upheld unless they are so arbitrary or unreasonable as to be irrational.

*Harper v. Lindsay,* 454 F.Supp. 597, 601 (S.D.Tex.1978); *see Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934).

■ Applying the rational basis test to the regulations before us, we find that only one requirement of section 20 is so arbitrary and unreasonable as to be unconstitutional. Section 20 requires, *inter alia,* that

[a]ll doors or doorway coverings within a massage establishment shall have an unobstructed opening not less than six (6) inches by six (6) inches in size capable of clear two-way viewing into and out of all cubicles, rooms, or booths. Said opening shall not be less than four and one-half (4½) feet or more than five and one-half (5½) feet from the floor of the massage establishment.

We have thought long and hard about this particular provision, and can think of no rational justification for it. Free passage into and out of massage parlor cubicles, rooms, or booths is already guaranteed by the requirement that "[n]o massage shall be performed within any cubicle, room, booth, or any area within a massage establishment which is fitted with a door capable of being locked." Regs. § 20. The prohibition against interior doors capable of being locked serves to protect both massager and customer in the event of fire or "foul play"; the six-inch window requirement serves no such practical purpose. In addition, a customer of a legitimate massage parlor is likely to expect and demand a reasonable amount of privacy while he or she is being massaged. The six-inch window requirement forces a customer to display his partially unclothed body to all who pass by, yet fails to serve any valid state interest. Because the six-inch window provision of section 20 has no rational purpose, we hold it

to be unconstitutional and direct the district court to permanently enjoin its enforcement.

■ Keeping in mind the Texas legislature's intent—to permit counties to control the establishment of legitimate massage parlors—it is easy to conceive of a rational basis for the remaining challenged provisions. For example, section 18,[10] regulating the keeping of records, will tend to prevent minors from frequenting massage parlors and will inhibit patrons from soliciting proscribed sexual acts. *See Pollard v. Cockrell,* 578 F.2d at 1015. Section 19,[11] titled "Clothing of Massagers," requires massagers to wear white clothing covering specified portions of the body, thus furthering the legitimate state interest in health and sanitation. The provisions pertaining to entrances, exits, doors, openings, and locks[12] allow for reasonable administrative searches, discourage illicit behavior, and eliminate potential fire traps. *See, e. g., Pollard v. Cockrell,* 578 F.2d at 1014 (upholding provision allowing warrantless administrative searches of massage parlors at police discretion). In addition, the regulation of closing hours[13] and entrances and exits[14] aids the county in creating and promoting living areas that protect "family values [and] youth values." *Village of Belle Terre v. Boraas,* 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974). *See Stansberry v. Holmes,* 613 F.2d 1285 (5th Cir. 1980) (upholding county regulations dealing with zoning of certain sexually oriented commercial enterprises.)

We need not set forth a hypothetical rational basis for each provision challenged; the sampling above amply illustrates the analysis applied in upholding these regulations. It should be noted that regulations similar to some of those before us have already been upheld in prior decisions of this court. *Pollard v. Cockrell,* 578 F.2d

---

10. Appendix.

11. Appendix.

12. Appendix, sections 11, 12 and 20. We exclude from this discussion the six-inch window

requirement of section 20, which we have held unconstitutional *supra.*

13. Appendix, section 13.

14. Appendix, section 11.

1002 (5th Cir. 1978), affirmed the constitutionality of massage parlor regulations which established hours of operation, authorized warrantless administrative searches, required customer registration in an appointment book, and allowed police inspection of the appointment book. *Tomlinson v. Mayor and Aldermen of Savannah*, 543 F.2d 570 (5th Cir. 1976), upheld a city ordinance which imposed strict training and certification requirements on massagers and established "rather onerous" place and manner restrictions on the giving of massages.[15] *Id.* at 571. An ordinance prohibiting bisexual massages was declared invalid in *Cianciolo v. Members of City Council, Knoxville, Tenn.*, 376 F.Supp. 719 (E.D.Tenn.1974); however, the court stated that

> there is nothing to prevent the City from regulating the *particulars* of massage establishments through more specific and less blanket-type prohibitions under examination here. For example, the City could prohibit the establishment, subject to licensing, from employing persons convicted of certain crimes; revoke a license of a licensee convicted of a crime involving sexual misbehavior; revoke a license of licensee whose employee was convicted of sexual misbehavior; regulate the hours during which a massage establish-

ment could lawfully operate; prohibit the administering of massages in private areas; prohibit the massaging of restricted areas of the body; and subject massage parlors to inspection by the City.

*Id.* at 724 (emphasis in original), *accord; Brown v. Brannon*, 399 F.Supp. 133 (M.D.N.C.1975), *aff'd without opinion*, 535 F.2d 1249 (4th Cir. 1976). These cases confirm the correctness of our determination to uphold all but one provision of Harris County's regulations.

In response to appellants' allegation that the regulations constitute a taking of vested property rights without due process, without compensation, and in a retroactive manner, we note with approval the clear statement of the scope and import of the state's police power in *Comtronics, Inc. v. Puerto Rico Telephone Co.*, 409 F.Supp. 800, 809–10 (D.P.R.1975), *aff'd*, 553 F.2d 701 (1st Cir. 1977), *quoted in Harper v. Lindsay*, 454 F.Supp. at 601.

> The right to exercise the police power is a continuing one. It is one of the essential powers of government and the imperative necessity for its existence precludes any limitation upon it unless it be arbitrarily exercised. It is probably the last limitable of governmental powers, even though

---

**15.** We suspect that the Savannah ordinance challenged in *Tomlinson* was similar to Harris County's massage parlor regulations. Unfortunately, the ordinance is not set forth in the opinion, and the ordinance provisions are discussed only in general terms.

The *Tomlinson* decision is predicated upon the United States Supreme Court's dismissal of appeals from state court decisions upholding the constitutionality of ordinances prohibiting heterosexual massages. *See Smith v. Keator*, 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974), *dismissing for want of a substantial federal question*, 285 N.C. 530, 206 S.E.2d 203; *Rubenstein v. Township of Cherry Hill*, 417 U.S. 963, 94 S.Ct. 3165, 41 L.Ed.2d 1136 (1974), *dismissing for want of a substantial federal question*, No. 10,027 (N.J.Sup.Ct., Jan. 29, 1974); *Kisley v. City of Falls Church*, 409 U.S. 907, 93 S.Ct. 237, 34 L.Ed.2d 169 (1972), *dismissing for want of a substantial federal question*, 212 Va. 693, 187 S.E.2d 168. The *Tomlinson* court relied on *Hicks v. Miranda*, 422 U.S. 332, 344–46, 95 S.Ct. 2281, 2289, 2290, 45 L.Ed.2d 223 (1975), for the proposition that the dismissal of an appeal for want of a substantial

federal question is a disposition on the merits of the precise issues raised on appeal. The court went on to hold that "*Hicks* and the dismissals of the *Smith, Rubenstein*, and *Kisley* appeals foreclose reconsideration of constitutional challenges identical to those made here against the Savannah ordinance." 543 F.2d at 572. Although *Tomlinson* involved a challenge to a heterosexual massage provision (presumably a challenge identical to those in *Smith, Rubenstein*, and *Kisley*), the decision indicates that other provisions of the ordinance were also being challenged. *See* 543 F.2d at 571 ("Appellants seek declaratory and injunctive relief to prevent enforcement of a Savannah ordinance that prohibits heterosexual massages, imposes strict training and certification requirements on massagists, and puts rather onerous place and manner restrictions on the giving of massages.") The *Tomlinson* opinion, however, does not state the court's reasons for upholding those additional ordinance provisions; consequently, the decision carries little precedential weight in the instant case. *See also Pollard v. Cockrell*, 578 F.2d at 1010–11.

in its operation it often cuts down property rights, and is capable of being exercised to legislate retroactively without offending due process. Thus it is that a vested interest in existing conditions, be it a license to operate a business, existing building codes or zoning regulations, present rates of interest, health regulations, or whatever, cannot be asserted against the proper exercise of the police power.

Except for the six-inch window provision of section 20, Harris County's massage parlor regulations constitute a reasonable and rational exercise of the police power. We therefore affirm in part, reverse in part the district court's conclusion of constitutionality.

### IV. The Regulations Are Not Unconstitutionally Vague

Appellants submit that Texas' massage parlor statute, Tex.Rev.Civ.Stat. art. 2372v, and the Harris County massage parlor regulations, are unconstitutionally vague, uncertain and indefinite. They assert that the statute and regulations are not "couched in terms precise enough to give fair notice of conduct constituting a criminal violation." Brief for Appellants at 30.

We summarily dismiss the vagueness claim as it pertains to article 2372v. The district court stated, and we agree, that article 2372v is not a criminal statute, but merely an enabling act which provides the county commissioners courts with authority to adopt criminal regulations if they so choose. No one may be prosecuted under article 2372v alone, because the statute does not establish any conduct as criminal. When a commissioners court adopts regulations under 2372v, it is the regulations and not the enabling act which must be sufficiently definite to give fair notice of the prohibited conduct. We thus reject appellants' claim that article 2372v is unconstitutionally vague.

Appellants assert that the massage parlor regulations fail to provide sufficient notice of proscribed conduct. They point to section 9 of the regulations, which provides that "[i]t shall be unlawful for any person operating a massage establishment to permit or allow an employee . . . to violate these Regulations on the premises of the massage establishment." They argue that the provision places onerous responsibilities upon the person "operating" the establishment without adequately defining "operating." Appellants similarly claim that the section 14 requirement of "a modern and approved method of sterilization" for instruments and equipment is impermissibly vague in its failure to specify what methods of sterilization are acceptable. They further object to the lack of definition of "communicable disease" in section 15, "massage table or treatment table" in section 16, and "opaque" clothing in section 19.

We do not think Harris County's massage parlor regulations are so vague "that men of common intelligence must necessarily guess at [their] meaning and differ as to [their] application." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). The regulatory provisions are "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *Id.* at 391, 46 S.Ct. at 127. The prohibition against excessive vagueness does not invalidate every enactment which could have been drafted with greater precision; "[a]ll the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose v. Locke*, 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975).

Harris County's massage parlor regulations are cast in terms sufficiently precise to give fair warning of the conduct proscribed, in light of common understanding and practices. *See Stansberry v. Holmes*, 613 F.2d 1285 (5th Cir. 1980). The regulations are not impermissibly vague.

### V. The Regulations Do Not Violate the Right to Procedural Due Process

Sections 44 and 45 of the massage parlor regulations provide that the county sheriff

may suspend or revoke a massage parlor's or a massager's license for a violation of the regulations. The suspension or revocation is effective ten days after written notice is given to the licensee. The regulations provide the right to appeal the sheriff's action, and an appeal automatically stays the license suspension or revocation pending appeal. *See* Regs. §§ 44, 45, 66. The appeal procedure entitles the aggrieved party to a hearing before a hearing examiner appointed by the Commissioners Court. Both the sheriff and the aggrieved party may present witnesses, documents and exhibits; however, the hearing examiner will not be bound by formal rules of evidence and will control the evidence, reserving to himself the power to exclude testimony or exhibits he does not consider relevant. Regs. § 66C. A party dissatisfied with the hearing examiner's decision is entitled to review by the Commissioners Court, which will either affirm, reverse, or modify the decision of the hearing examiner. Regs. § 66F.

 Appellants argue that these provisions fail to provide adequate notice and hearing prior to revocation or suspension of a license. We disagree. Although the sheriff may suspend or revoke a license for an infraction of the regulations, without a prior hearing, the revocation or suspension is automatically stayed if the licensee appeals. This procedure is equivalent to a hearing prior to revocation, and passes constitutional muster. *See Porter v. Investors Syndicate*, 286 U.S. 461, 470–71, 52 S.Ct. 617, 620–21, 76 L.Ed. 1226 (1932) ("Where as ancillary to the review and correction of administrative action, the state statute provides that the complaining party may have a stay until final decision, there is no deprivation of due process, although the statute in words attributes final and binding character to the initial decision of a board or commissioner.")

 Appellants further allege that the regulations do not afford procedural due process because section 66 does not provide for representation by an attorney, cross-examination of witnesses, jury trial, nor does it provide any guidelines for the admittance or exclusion of evidence. In response to this assertion, we note that the regulations do not expressly forbid the right to counsel, cross-examination, jury trial, etc. The regulations' silence as to the procedure to be followed does not amount to a denial of due process. *See Pollard v. Cockrell*, 578 F.2d at 1016; *Smith v. Keator*, 285 N.C. 530, 206 S.E.2d 203, *appeal dismissed*, 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed.2d 636 (1974). In addition, a license suspension or revocation hearing is purely civil in nature, and should not be equated to a criminal proceeding. Procedural due process in the administrative setting does not always require application of the judicial model. *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977); *see, e. g., Woodbury v. McKinnon*, 447 F.2d 839 (5th Cir. 1971) (cross-examination need not be a part of every hearing in order to satisfy due process). Since the Harris County regulations specifically provide for notice, hearing, and appeal—the fundamentals of due process—we hold that their failure to explicitly provide additional procedural safeguards does not result in a constitutional deprivation.

## V. Conclusion

We have carefully considered each point of error raised by the appellants. With one minor exception, we find their contentions to be without merit. The challenged regulations do not exceed the scope of authority delegated to the Harris County Commissioners Court by the Texas legislature. The regulations are not excessively vague, nor do they violate appellants' procedural due process rights. Only one regulatory provision—requiring a six-inch by six-inch unobstructed opening on interior doors of a massage parlor—goes beyond the lawful exercise of the police power. Holding that the remaining provisions of the massage parlor regulations are constitutional, we affirm in large part the decision of the district court. We reverse the district court insofar as it upheld the six-inch window requirement, and we direct the court to permanently enjoin enforcement of that particular provision.

Affirmed in part, Reversed in part.

APPENDIX

Exhibit 1

Thursday, July 21st, A.D., 1977

REGULATIONS OF HARRIS COUNTY, TEXAS, FOR MASSAGE PARLORS

PART I. IN GENERAL

Section I. Authority.

These Regulations are adopted by the Commissioners' Court of Harris County, Texas, acting in its capacity as the governing body of Harris County, Texas. Authority of Harris County to adopt these Regulations is House Bill No. 34, enacted by the 65th Legislature of the State of Texas and signed by the Governor on or about May 25, 1977.

Section 2. Administration.

The Commissioners' Court hereby designates the Sheriff as the inspection and licensing officer pursuant to the above authority. The administration of these Regulations, including, but not limited to, licensing and inspecting hereunder, shall be performed by the Sheriff or his duly authorized deputy. Any peace officer certified by the State of Texas may enforce these Regulations.

Section 3. Area Covered by Regulations.

These Regulations apply in the unincorporated territory in Harris County, Texas.

Section 4. Definitions.

As used in these Regulations, the following words and phrases have the following meanings, unless context clearly demonstrates otherwise:

(1) "Commissioners' Court" means the Commissioners' Court of Harris County, Texas.

(2) "County" means Harris County, Texas.

(3) "Employee" means any individual who renders any service in connection with the operation of a massage establishment and receives compensation therefor including but not limited to massagers.

(4) "Massage" means the rubbing, kneading, tapping, compression, vibration, application of friction, or precussion of the human body or parts of it by hand or with an instrument or apparatus.

(5) "Massager" means a individual who administers massages for compensation.

(6) "Massage Establishment" means a business establishment where massagers practice massage.

(7) "Massage Parlor" means Massage Establishment.

(8) "Masseur" means massager.

(9) "Patron" means any individual who receives a massage.

(10) "Person" means an individual, partnership, corporation, or other entity.

(11) "Regulations" means the Regulations of Harris County, Texas for Massage Parlors.

(12) "Sheriff" means the Sheriff of Harris County, Texas.

(13) "State" means the State of Texas.

(14) "Unincorporated territory" means the territory outside the corporate limits of an incorporated city or town.

Section 5. Licensed Physical Therapist, etc. Excepted.

(a) These Regulations do not apply to a licensed physical therapist, a licensed athletic trainer, a licensed cosmetologist, or a licensed barber performing functions authorized under the license held, nor do these Regulations apply to a licensed physician or chiropractor, or any individual working under the direct supervision of a licensed physician or chiropractor, while engaged in practicing the healing arts.

(b) These Regulations do not apply to the administration of massage for therapeutic purposes in a hospital, nursing home, or other health care facility.

Section 6. Licenses and Certificates Required.

(1) It shall be unlawful for any person to operate a massage establishment without a valid Massage Parlor License therefor issued by the Sheriff in accordance with the provisions of these Regulations.

(2) It shall be unlawful for any person to operate a massage establishment unless each and every massager thereof has a valid Massager's License issued by the Sheriff in accordance with the provisions of these Regulations.

(3) It shall be unlawful for any individual to work as a massager without having a valid Massager's License issued by the Sheriff in accordance with the provisions of these Regulations.

(4) It shall be unlawful for any person to operate a massage establishment unless each and every employee thereof has a valid health certificate card in accordance with the provisions of these Regulations.

(5) It shall be unlawful for any individual to work in a massage establishment without having a valid health certificate card issued in accordance with the provisions of these Regulations.

Section 7. Licenses Displayed.

(1) A Massage Parlor License issued under these Regulations shall be displayed at all times in an open and conspicuous place in the massage establishment for which it was issued.

(2) It shall be unlawful for any massager to work in, on or about any massage establishment, unless there shall be displayed in an open and conspicuous place in said massage establishment, a Massager's License issued to said massager pursuant to these Regulations.

Section 8. Accommodating Patrons of Both Sexes Prohibited.

(a) It shall be unlawful for any massage establishment to accommodate both male and female patrons, or to advertise that it accommodates both male and female patrons. Any massage establishment that advertises its services shall clearly indicate in all its advertising whether it accommodates male or female patrons.

(b) It shall be unlawful for a massager to massage a patron of the opposite sex.

Section 9. Responsibility of Employer.

It shall be unlawful for any person operating a massage establishment to permit or allow an employee, agent or massager thereof, or any person whatsoever, to violate these Regulations on the premises of the massage establishment.

Section 10. Alcoholic Beverages prohibited.

No person shall sell, give, dispense, provide or keep or cause to be sold, given, dispensed, provided or kept, any alcoholic beverage on the premises of any massage establishment.

Section 11. Entrances, exits.

No massage establishment shall have an entrance or exit way providing a direct passageway to any other type of business, residence or living quarters.

Section 12. Access.

All massage establishments operating under the authority of these Regulations are declared to be public places, and shall not, during business hours, have the doors to the exits and entrances of such establishments locked or obstructed in any way so as to prevent free ingress and egress of persons; provided, however, such doors may be closed.

Section 13. Closing Hours.

No massage establishment shall be kept open for any purpose between the hours of 10:00 o'clock p.m. and 8:00 o'clock a.m.

Section 14. Maintenance of premises; sterilization and cleaning equipment.

It shall. be the duty of every person conducting or operating a massage establishment to keep the same at all times in a clean and sanitary condition. All instruments and mechanical, therapeutic, and bathing devices or parts thereof that come into contact with the human body shall be sterilized by a modern and approved method of sterilization, before initial use, and any such instruments and devices or parts thereof, after having been used upon one patron, shall be sterilized before being used upon another. Towels and linens furnished for use of one patron shall not be furnished for use of another until thoroughly laundered.

**Section 15.** Cleanliness and health of employees generally; diseased patrons not to be accommodated.

All massagers in a massage establishment shall wash their hands thoroughly before administering a massage to each patron accommodated. No individual suffering from a communicable disease shall work or be employed in a massage establishment. No individual suffering from a communicable disease to the knowledge of the owner, custodian, or employees of a massage establishment shall be accommodated as a patron therein.

**Section 16.** Massage Tables.

The massage shall be performed on a massage table or treatment table. No beds, water mattresses, cots or other equipment designed for sleeping shall be permitted at the massage establishment.

**Section 17.** List of employees.

The massage establishment shall keep a list of the names and addresses of all employees, both on duty and off duty, and such list shall be shown to the Sheriff or his duly authorized deputy upon request.

**Section 18.** Keeping of records.

Every person who operates a massage establishment shall maintain an accurate record in a well bound book of all patrons accommodated; such record shall include the patron's name, age and current address together with the time, date and place of service, the nature of the service provided, and the name of the massager so providing the service. Every patron shall furnish proof of identity by showing a valid driver's license, voter registration certificate or similar identification, to the person that operates the massage establishment for the purpose of maintaining the accuracy of the massage establishment's record book. Such record book shall be available at all times at the massage establishment for inspection by the Sheriff or his duly authorized deputy.

**Section 19.** Clothing of Massagers.

The male massagers shall wear all white slacks and all white shirt and the female massagers shall wear an all white dress or all white slacks and all white blouse while engaged in the treatment of a patron. An all white surgical gown or smock may be substituted. Said clothing shall at least cover the massager's pubic area, perineum, buttocks, natal cleft and entire chest to four inches below the collarbone and legs not exposed more than six inches above the knees. The massager's clothing shall be kept clean at all times, and soiled clothing shall not be worn during the treatment of a patron. The massager's clothing shall be opaque. No massager shall massage a patron whose genitals are exposed during the treatment; and no patron of a massage establishment shall knowingly expose his genitals during a massage to a massager.

**Section 20.** Doors, Openings, Locks.

No massage shall be performed within any cubicle, room, booth, or any area within a massage establishment which is fitted with a door capapble of being locked. Exterior doors may have locks, but such exterior doors shall not be locked while the massage establishment is open for business or while any massage is being performed therein. All doors or doorway coverings within a massage establishment shall have an unobstructed opening not less than six (6) inches by six (6) inches in size capable of clear two-way viewing into and out of all cubicles, rooms, or booths. Said opening shall be not less than four and one-half (4½) feet or more than five and one-half (5½) feet from the floor of the massage establishment. Toilets and cubicles used solely for the application of liquid and vapor baths shall have no such opening in the covering door or curtain, but shall be clearly marked as to purpose on the exterior door or curtain of said cubicle, room or booth. Nothing contained herein shall be construed to eliminate other requirements of statute or ordinance concerning the maintenance of premises, nor to preclude authorized inspection thereof, whenever such inspection is deemed necessary by the Sheriff or his duly authorized deputy.

**Section 21.** *Supervision.*

A massage parlor licensee shall have the premises supervised at all times when open for business. Any massage establishment

shall have one individual who qualifies as a massager on the premises at all times while the massage establishment is open for business. The massage parlor licensee shall personally supervise the massage establishment, and shall not violate, or permit others to violate, any provisions of these Regulations.

Sections 22–30. *Reserved.*

## PART II. LICENSES

Section 31. Application for Massage Parlor License.

Any person desiring a Massage Parlor License shall file a written application, with the Sheriff on a form to be furnished by the Sheriff.

A. The application shall set forth the following:

(1) The name of the applicant and whether individual, partnership, corporation, or otherwise, and if a corporation, the state of incorporation;

(2) The name, style, and designation under which the massage establishment is to be operated;

(3) The business address where the massage establishment is to be operated;

(4) The name, residence addresses and telephone numbers of the manager or other individual to be principally in charge of the operation of the massage establishment;

(5) The following personal information concerning the applicant, if an individual; and concerning each stockholder holding more than ten (10) percent of the stock of the corporation, each officer and each director, if the applicant is a corporation; and concerning the partners, including limited partners, if the applicant is a partnership; and the holder of any lien, of any nature, upon the massage establishment and/or the equipment used therein; and concerning the manager or other individual principally in charge of the operation of the massage establishment:

(a) Name, complete residence address and residence telephone numbers.

(b) All addresses used during the five year period immediately prior to the date of the application, and the period of time each was used.

(c) Written proof of age.

(d) Height, weight, color of hair and eyes, and sex.

(e) The massage or similar business history and experience ten (10) years prior to the date of application, including but not limited to whether or not such individual in previously operating in this or another city or state under license or permit has had such license or permit denied, revoked, or suspended and the reason therefor, and the business activities or occupations subsequent to such action of denial, suspension or revocation.

(f) All criminal convictions other than misdemeanor traffic violations, fully disclosing the jurisdictions in which convicted and the offense for which convicted.

(6) An election to accommodate either male or female patrons.

(7) Authorization for the County, its agents and employees to seek information and conduct an investigation into the truth of the statements set forth in the application and the qualifications of the applicant for the license;

(8) The names and addresses of three (3) adult residents of the County who will serve as character references for each individual listed above in subsection A(5) of this Section. These references must be individuals other than relatives and business associates;

(9) Written declaration by the applicant, given under oath or affirmation, under penalty of perjury, that the information contained in and attached to the application is true and correct, said declaration being duly dated and signed in the County.

B. The application shall be accompanied by the following:

(1) A tender of the correct license fee as hereinafter provided.

(2) Proof than an assumed name certificate has been filed with the County Clerk, if the applicant is to operate the massage establishment under an assumed name.

(3) Proof that applicant is authorized to do business in the State, if applicant is a foreign corporation.

(4) Two (2) front-face portrait photographs taken within thirty (30) days of the date of the application and at least two (2) by two (2) inches in size, for each individual listed above in subsection A(5) of this Section.

C. The applicant shall provide such other information, identification, and physical examination of the person as shall be deemed necessary by the Sheriff to determine the truth of the matters hereinbefore required to be set forth in the application.

Section 32. Application for Massager's License.

Any individual desiring a Massager's License shall file a written application with the Sheriff on a form to be furnished by the Sheriff.

A. The application shall set forth the following:

(1) The business name, address and all telephone numbers where the massage is to be practiced, if known. If not known, the applicant shall so state.

(2) The following personal information concerning the applicant:

(a) Name, complete residence address and residence telephone number;

(b) All addresses used during the five year period immediately prior to the date of the application, and the period of time each was used.

(c) Written proof of age;

(d) Height, weight, color of hair and eyes, and sex;

(e) The massage or similar business history and experience ten (10) years prior to the date of application, including but not limited to whether or not such individual in previously operating in this or another county or state under license or permit has had such license or permit denied, revoked, or suspended and the reason therefor, and the business activities or occupations subsequent to such action of denial, suspension or revocation;

(f) All criminal convictions other than misdemeanor traffic violations, fully disclosing the jurisdiction in which convicted and the offense for which convicted;

(3) Authorization for the County, its agents and employees to seek information and conduct an investigation into the truth of the statements set forth in the application and the qualifications of the applicant for the license.

(4) Written declaration by the applicant, given under oath or affirmation, under penalty of perjury, that the information contained in and attached to the application is true and correct, said declaration being duly dated and signed in the county.

B. The application shall be accompanied by the following:

(1) A tender of the correct license fee as hereinafter provided.

(2) Two (2) front-face portrait photographs of the applicant taken within thirty (30) days of the date of application and at least two (2) inches by two (2) inches in size.

(3) A photocopy of applicant's grade record, reflecting successful completion of three (3) semester hours of human anatomy and physiology at an institution of higher education which is accredited. by a recognized accrediting agency as defined in Chapter 61 of the Texas Education Code.

(4) A valid health certificate card issued to the applicant pursuant to these Regulations.

C. The applicant shall provide such other information, identification, and physical examination of the applicant deemed necessary by the Sheriff in order to determine the truth of the matters hereinbefore required to be set forth in the application.

Section 33. Investigation by Sheriff.

Upon receiving the application for a Massage Parlor or Massager's License, the Sheriff shall conduct an investigation into the moral character of the applicant, if an individual, or of the stockholders holding more than ten (10) percent of the stock of the corporation, and of the officers and directors, if the applicant is a corporation, or of the partners, including limited partners, if the applicant is a partnership, or the holder of any lien, of any nature, upon the massage establishment and/or the equipment used therein or of the manager or other individual principally in charge of the operation of the massage establishment, and personal and criminal history. The Sheriff may, in his discretion, require a personal interview of the applicant, and such further information, identification and physical examination of the applicant as shall bear on the investigation.

In the case of applications for Massage Parlors Licenses, the Sheriff shall cause to be conducted an investigation of the premises where the massage establishment is to be carried on, for the purposes of assuring that such premises comply with all the sanitation requirements as set forth in these Regulations and with the regulations of public health, safety and welfare.

Any licenses required by these Regulations shall be issued and signed by the Sheriff or his duly authorized deputy.

Section 34. Issuance of Massage Parlor License.

The Sheriff shall issue a Massage Parlor License within thirty (30) days of receipt of the application unless he finds that:

(a) The correct license fee has not been tendered to the County, and, in the case of a check, or bank draft, honored with payment upon presentation;

(b) The operation, as proposed by the applicant, if permitted, would not comply with all applicable laws;

(c) The applicant, if an individual, or any of the stockholders holding more than ten (10) percent of the stock of the corporation, or any of the officers or directors, if the applicant is a corporation, or any of the partners, including limited partners, if the applicant is a partnership, or the holder of any lien, of any nature, upon the massage establishment and/or the equipment used therein the manager or other individual principally in charge of the operation of the massage establishment has been convicted of any felony or a misdemeanor involving moral turpitude within five (5) years immediately prior to the date of the application;

(d) The applicant has knowingly made any false, misleading, or fraudulent statement of fact in the license application or in any document required by the County in conjunction therewith;

(e) The applicant has had a massage establishment, massager, or other similar license or permit revoked or suspended by the County or any other state or local agency within five (5) years immediately prior to the date of the application;

(f) The applicant, if an individual, or any of the officers or directors, if the applicant is a corporation, or any of the partners, including limited partners, if the applicant is a partnership, or the manager or other individual principally in charge of the operation of the massage establishment, is not over the age of eighteen (18) years.

(g) The applicant did not state whether the massage establishment would accommodate male patrons or female patrons.

(h) The applicant and/or application does not meet all other requirements of these Regulations.

Section 35. Issuance of Massager's License.

The Sheriff shall issue a Massager's License within fifteen (15) days of receipt of the application unless he finds that:

(a) The correct license fee has not been tendered to the County, and, in the case of a check or bank draft, honored with payment upon presentation;

(b) The applicant has been convicted of a crime involving moral turpitude, within five (5) years immediately prior to the date of the application;

(c) The applicant has knowingly made any false, misleading, or fraudulent statements of fact in the license application or in any document required by the County in conjunction therewith;

(d) The applicant has had a massage establishment, massager, or other similar license or permit revoked or suspended by the County or any other state or local agency within five (5) years prior to the date of application.

(e) The applicant is not over the age of eighteen (18) years.

(f) The applicant has not successfully completed three (3) semester hours of human anatomy and physiology at an institution of higher education which is accredited by a recognized accrediting agency as defined in Chapter 61 of the Texas Education Code.

(g) The applicant does not have a valid health certificate card issued pursuant to these Regulations.

(h) The applicant and/or application does not meet all other requirements of these Regulations.

Section 36. Fees.

The fee for a Massage Parlor license shall be Fifty Dollars ($50.00) per year. The fee for a Massager's License shall be ten dollars ($10.00) per year.

Section 37. Return of fee.

No portion of any fee collection under these Regulations shall be returned after a license has been issued.

Section 38. Transfer prohibited.

Massage Parlor Licenses or Massager's Licenses are not transferable, separate or divisible, and such authority as a license confers shall be conferred only on the licensee named therein.

Section 39. License Valid for one year.

Each license issued under these Regulations shall be valid for one (1) year only from the date of its issuance as shown thereon.

Section 40. Renewal of Licenses.

Any time after the expiration of eleven months of the term of a license required by these Regulations, the Licensee thereof may file with the Sheriff a written application to renew such license on a form to be furnished by the Sheriff. Such application shall contain the information required herein for an original license to the extent that such information would not be duplicative and such application shall be accompanied by a tender of the correct fee as herein provided. The Sheriff shall renew such license unless he finds that the requirements of these Regulations for the issuance of a license are not met.

Section 41. Obtaining license by fraud.

It shall be unlawful for any person to knowingly make any false, fraudulent or untruthful statement, either written or oral, or in any way knowingly to conceal any material fact, or to give or use any fictitious name in order to secure or aid in securing a license required by these Regulations and any such license so secured shall be void.

Section 42. Fraudulent use of license.

It shall be unlawful for any person to fraudulently make use of, in any manner to his own or another's benefit, a Massage Parlor License or a Massager's License which has not been duly issued to him in accordance with the provisions of these Regulations.

Section 43. Counterfeiting, changing, defacing license.

It shall be unlawful for any person to counterfeit or forge, or to change, deface or alter a license required or issued under the provisions of these Regulations.

Section 44. Suspension.

Any license issued under these Regulations may be suspended for a period not to exceed ninety (90) days by the Sheriff for a

violation of these Regulations by the licensee thereof.

Any Massage Parlor license issued under these Regulations may be suspended for a period not to exceed ninety (90) days by the Sheriff for a violation of these Regulations by an agent or employee of the massage establishment provided such violation occurred on the massage establishment premises.

Such suspension shall be effective ten (10) days after written notice thereof is given to the licensee. Such notice shall inform the licensee of the reason(s) for such suspension, the duration of such suspension, the beginning of such suspension, and the right to appeal under the provisions of these Regulations.

Such notice may be given by delivering the same to the licensee or by depositing the same in the United States Mail, Postage prepaid, certified or registered mail, return receipt requested, addressed to the licensee at the address stated on the license application and such notice shall be deemed given upon deposit of the notice in the United States Mail as aforesaid.

This section is cummulative of all other rules, regulations and laws. An appeal, as provided herein, from any suspension hereunder, shall automatically stay such suspension pending such appeal. (1) After the effective date of the suspension and if an appeal is not made or (2) if an appeal is made and the suspension is upheld in whole or in part, then and in either of those events, the Sheriff shall have the authority to take possession of the license wheresoever it may be found and hold the same until the suspension period has expired.

Section 45. Revocation.

Any license issued under these Regulations may be revoked by the Sheriff for a violation of any of these Regulations concerning the application for and issuance of licenses or certificates hereunder or upon final conviction of the licensee of an offense defined in Chapter 43 of the Texas Penal Code or an offense involving moral turpitude. In construing and applying this Section, a final conviction of any individual designated in subsection A(5) of Section 31 of these Regulations shall be deemed to be a final conviction of the licensee. Any Massage Parlor License issued under these Regulations may be revoked by the Sheriff for a violation of these Regulations by an agent or employee of the massage establishment provided such violation occurred on the massage establishment premises.

Such revocation shall be effective ten (10) days after written notice thereof is given to the licensee. Such notice shall inform the licensee of the reason(s) for such revocation, the beginning of such revocation, and the right to appeal under the provisions of these Regulations. Such notice may be given by delivering the same to the licensee or by depositing the same in the United States Mail, postage prepaid, certified or registered mail, return receipt requested, addressed to the licensee at the address stated on the license application and such notice shall be deemed given upon deposit of the notice in the United States Mail as aforesaid.

This section is cummulative of all other rules, regulations and laws. An appeal, as provided herein, from any revocation hereunder, shall automatically stay such revocation pending such appeal. (1) After the effective date of the revocation and if an appeal is not made or (2) if an appeal is made and the revocation is upheld, then and in either of those events, the Sheriff shall have the authority to take possession of the license wheresoever it may be found.

Section 46. Health Certificate Card.

The Health certificate care required by these Regulations shall be issued by a legally licensed physician, residing in Harris County, Texas, who has duly registered his license with the District Clerk of Harris County. Such card shall attest the fact that the bearer has been actually and thoroughly examined by such physician and that such examination disclosed the fact that such persons was free from any infectious or contagious disease in a transmissible condition. The examination so required shall specifically include a chest X-ray and a

standard blood test for syphllis. All of the information and test and results thereof and the dates and other information required to be shown on the Health Certificate card, except the employee's signature, shall be placed thereon by the physician issuing the same or under his direction and no such health certificate card shall be valid unless it contains all of the information shown to be required thereon.

## Section 47. Signatures; form.

A health certificate. card required by these Regulations shall bear the signature of the individual named thereon, the signature of the physician executing the examination and test upon which such certificate is based and shall be in the following form, which forms will be furnished to the physician by the Sheriff upon request:

### COUNTY OF HARRIS HEALTH CERTIFICATE CARD

Issued_____19___.

This certificate is Valid for One Year Only—Post conspicuously for inspection

This certifies that_____

Address_____Occupation_____

Employed at_____Address_____

Was actually and thoroughly examined for Skin, Eyes, Ears, Nose, Throat, Mouth, Lungs and Genitals.

And Serological Test was Made (date) _____

Chest X-ray (date)_____Result_____

Others: _____

And found free from any infectious or contagious diseases in a transmissible condition.

Color Eyes _____ Color Hair_____Height__

Weight _____ Race _____ Sex _____ Age __

Doctor:_____Address_____

Doctor's Signature_____

State Lic. No._____

Employee's Signature_____

## Section 48. Health Certificate card valid for one year.

Each health certificate card issued under these Regulations shall be valid for one (1) year only from the date of its issuance as shown thereon.

## Section 49. Obtaining health certificate card by fraud.

It shall be unlawful for any person to knowingly make any false, fraudulent or untruthful statement, either written or oral, to any examining physician, or in any way knowingly to conceal any material fact from such physician, or to give or use any fictitious name in order to secure or aid in securing a health certificate card required by these Regulations, and any such health certificate card so secured shall be void.

## Section 50. Fraudulent use of health certificate card.

It shall be unlawful for any individual to fraudulently make use of, in any manner to his own or another's benefit or advantage, a health certificate card which has not been duly issued. to him inaccordance with the provisions of these Regulations.

## Section 51. Unlawful issuance.

It shall be unlawful for any individual who is not a legally license physician residing in Harris County, and who has not registered his license with the District Clerk of Harris County, to issue a health certificate card required under the provisions of these Regulations.

## Section 52. Counterfeiting, changing, defacing, health certificate card.

It shall be unlawful for any person to counterfeit or forge, or to change, deface ar alter a health certificate card required by or issued under the provisions of these Regulations.

## Section 53. Obtaining new health certificate card upon request of employer.

(a) Every individual required by these Regulations to have a health certificate card shall, upon the request of an employer or the Sheriff or his duly authorized deputy, secure an adequate physical examination of himself by a duly licensed physician who has registered his license with the District

Clerk of Harris County, in the manner provided in these Regulations, and secure, in evidence thereof, a valid health certificate card meeting the requirements of these Regulations. The fact than an individual who is requested to secure such an examination has, at the time of such request a valid health certificate card will not relieve such individual of the duty to secure another such card before commencing or continuing in such employment or working in any such capacities.

(b) Upon the refusal or failure of any such individual to comply with the request of his employer or the Sheriff or his duly authorized deputy, to secure an examination and health certificate card, as provided in subsection (a), if the individual so refusing has, at the time of such refusal or failure to comply with such request, a valid health certificate card, the same shall immediately be surrendered to the Sheriff, or his duly authorized deputy for cancellation, and it shall be unlawful for any such individual to fail or refuse to so surrender such license to the Sheriff or his duly authorized deputy for cancellation. If the health certificate card of an individual so refusing to secure another examination and health certificate card is in the custody of the individual's employer or the agent or representative of such employer, such custodian of such health certificate card shall, upon such failure or refusal by such individual, immediately forward the same to the Sheriff or his duly authorized deputy for cancellation, and thereafter such individual shall not be allowed or permitted to work or continue working in any of the capacities for which a health certificate card is required by these Regulations until such time as such individual shall present to his employer a valid health certificate card bearing a date of issue subsequent to the cancellation date of such individual's cancelled health certificate card.

Section 54–65. Reserved.

### PART III. APPEALS, ETC.

Section 66. Appeals.

A. Any person aggrieved by an action or decision of the Sheriff or his duly authoriz-ed deputy regarding the issuance, suspension or revocation of a license required hereunder or the cancellation of a health certificate card required hereunder may, within thirty (30) days thereafter, appeal to a Hearing Examiner appointed by the Commissioners' Court.

B. The appeal to the Hearing Examiner shall be initiated by filing a written objection with the Hearing Examiner. The written objection shall state what the action or decision of the Sheriff should have been and why. A copy of the document containing the notice of the action or decision complained of shall be attached to said written objection. Upon receipt of said written objection and attachment the Hearing Examiner shall set the same down for a hearing to be held within the next fifteen days and advise all parties of the date, time and place of hearing. The person aggrieved shall bring to the hearing all licenses issued to him pursuant to these Regulations.

C. At hearings before the Hearing Examiner all witnesses will be sworn. The Hearing Examiner will hear the testimony of the Sheriff or his duly authorized deputy and/or each individual as will be called by the Sheriff or his duly authorized deputy, additionally, the Hearing Examiner will hear the testimony of the persons aggrieved along with any witnesses the person aggrieved may call. Additionally, the Hearing Examiner will review all documents and exhibits submitted to him by the parties. The Hearing Examiner will not be bound by formal rules of evidence and will control the evidence, reserving to himself the power to exclude testimony or exhibits he does not consider relevant.

D. The Hearing Examiner will maintain an accurate record of the evidence adduced at the hearing.

E. Within forty-eight (48) hours of the close of the hearing the Hearing Examiner will notify the Sheriff and the person aggrieved of his decision. Within three (3) days of the close of the hearing the Hearing Examiner will reduce to writing his report, which will consist of a finding of facts and

his decision. The Hearing Examiner will file the original of his report with the Clerk of Commissioners' Court, will keep one copy for himself, will send one copy to the person aggrieved and will send one copy to the Sheriff.

F. If the Sheriff or the person aggrieved is dissatisfied with the Hearing Examiner's decision, he may, within five days from the date the Hearing Examiner filed his report, file a written objection with the Clerk of Commissioners' Court. When such an objection is filed, the Clerk will notify the County Judge who will place the matter on the Agenda of Commissioners' Court for review at the next meeting of Commissioners' Court which is at least five (5) days after the date of the filing of the objection. If the objection is filed by the Sheriff, notice that the matter is on the Agenda will be sent to the applicant by mail. The person aggrieved shall bring to the Commissioners' Court hearing all licenses issued to him pursuant to these Regulations. When the matter comes before Commissioners' Court, the Commissioners' Court will review the matter, considering such information as is in the Hearing Examiner's file and report along with such other evidence as Commissioners' Court may deem relevant and as may be offered by the Sheriff or the person aggrieved. The Commissioners' Court will either affirm, reverse, or modify the decision of the Hearing Examiner.

Section 67. <u>Misdemeanor.</u>

Any person who violates any provision of these Regulations commits a Class B misdemeanor.

Section 68. <u>Severability.</u>

In case any one or more of the sections, provisions, clauses, or words of the Regulations or the application of such sections, provisions, clauses, or words to any situation or circumstance shall for any reason be held to be invalid or unconstitutional, such invalidity or unconstitutionality shall not affect any other sections, provisions, clauses, or words of these Regulations or the application of such sections, provisions, clauses, or words to any other situation or circumstance, and it is intended that these Regulations shall be severable and shall be construed and applied as if any such invalid or unconstitutional section, provision, clause, or word had not been included herein.

Section 69. <u>Effective Date.</u>

These Regulations shall be effective on the first day of September, 1977.

VANCE, Circuit Judge, concurring:

I concur in the court's opinion. Brief elaboration of my understanding of part III, however, may be useful. Although a rational relation test governs our review of state authorized economic regulations, *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978), two points should be emphasized regarding our use of this test. First, we have reviewed the constitutionality of the challenged regulations in light of the city's actual purposes; we have not upheld the various regulations because of purposes that we have conjured into existence or purposes that have been offered by the city in the form of a post hoc rationalization. Second, the rational relation test is not necessarily applied in an either/or fashion to a multifaceted set of economic regulations. The appropriate standard of review is correlated to the substance of each regulation. If, as here, one part of the set abridges a fundamental right, such as the right of privacy, the state must demonstrate that the abridgement caused by that part is necessary to promote a compelling governmental interest and that no less intrusive means exists to achieve the state's legitimate purpose. I also believe that a similarly focused and strict analysis applies if, instead of abridging a fundamental right, a particular regulation transgresses a constitutional provision concerning *how* government should conduct its legitimate business; for example, a government may not enact ex post facto laws. U.S.Const. art. I, § 10, cl. 1. Under the facts of this case, however, I have no trouble embracing the court's opinion disposing of the appellants' due process, takings and retroactivity arguments.